UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RECLAIM THE RECORDS and ALEC FERRETTI,

Plaintiffs,

-v-

UNITED STATES DEPARTMENT OF STATE,

Defendant.

23 Civ. 1529 (VEC)

---

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2785
Fax: (212) 637-2702
Email: joseph.pantoja@usdoj.gov

JOSEPH A. PANTOJA
Assistant United States Attorney, *Of Counsel*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ..................................................................................................................1

    A.    The State Department's Consular Reports of Deaths of a U.S. Citizen
          Abroad...............................................................................................................1

    B.    The FOIA Request .............................................................................................4

ARGUMENT .......................................................................................................................5

    THE COURT SHOULD GRANT SUMMARY JUDGMENT TO THE STATE
    DEPARTMENT BECAUSE THE AGENCY HAS DEMONSTRATED THAT
    ITS SEARCH WAS REASONABLE AND ADEQUATE ................................................5

    A.    Summary Judgment Standard ...............................................................................5

    B.    The State Department's Search Was Reasonable and Adequate.............................7

    C.    Responding to the FOIA Request Would Require the State Department to
          Create a Record, Which Cannot Be Compelled Under FOIA ...............................7

CONCLUSION...................................................................................................................10

# TABLE OF AUTHORITIES

PAGE(S)

Cases

*Amnesty Int'l USA v. CIA*,
No. 07 Civ. 5435 (LAP), 2008 WL 2519908 (S.D.N.Y. June 19, 2008)................................. 6

*Arab Anti-Discrimination Comm. v. US. Dep't of Homeland Sec.*,
516 F. Supp. 2d 83 (D.D.C. 2007) ......................................................................................... 6

*Carney v. U.S. Dep't of Justice*,
19 F.3d 807 (2d Cir. 1994).................................................................................................... 5

*Cunningham v. U.S. Dep't of Justice*,
40 F. Supp. 3d 71 (D.D.C. 2014) ......................................................................................... 6

*Earle v. U.S. Dep't of Justice*,
217 F. Supp. 3d 117 (D.D.C. 2016) ...................................................................................... 6

*Espino v. U.S. Dep't of Justice*,
869 F. Supp. 2d 25 (D.D.C. 2012) ........................................................................................ 6

*Ferguson v. F.B.I.*,
No. 89-cv-5071 (RPP), 1995 WL 329307 (S.D.N.Y. June 1, 1995) ..................................... 1

*Forsham v. Harris*,
445 U.S. 169 (1980)............................................................................................................. 7

*Grand Cent. P'ship, Inc. v. Cuomo*,
166 F.3d 473 (2d Cir. 1999).................................................................................................. 5

*Hawkinson v. Executive Office for Immigration Review*,
No. 21-11817-MPK, 2023 WL 5153768 (D. Mass. Aug. 10, 2023) ...................................... 8

*Jenkins v. U.S. Dep't of Justice*,
263 F. Supp. 3d 231 (D.D.C. 2017) ...................................................................................... 6

*Johnson v. Central Intelligence Agency*,
330 F. Supp. 3d 628 (D.Mass. 2018) .................................................................................. 10

*Landmark Legal Foundation v. Department of Justice*,
211 F.Supp.3d 311 (D.D.C. 2016) ........................................................................................ 8

*Long v. Office of Pers. Mgmt.*,
692 F.3d 185 (2d Cir. 2012)................................................................................................. 5

*MacLeod v. United States Department of Homeland Security*,
No. 15-cv-1792 (KBJ), 2017 WL 4220398 (D.D.C. Sept. 21, 2017) ..................................... 6

*N.Y. Times Co. v. U.S. Dep't of Justice*,
756 F.3d 100 (2d Cir. 2014)................................................................................................. 5

*Nat'l Sec. Counselors v. CIA*,
898 F. Supp. 2d 233 (D.D.C. 2012) ...................................................................................... 9

*New York Times Co. v. U.S. Dep't of Justice*,
872 F. Supp. 2d 309 (S.D.N.Y. 2012)................................................................................... 1

*People for the Am. Way Found. v. U.S. Dep't of Justice*,
451 F.Supp.2d 6 (D.D.C. 2006) ............................................................................................ 9

*Pierce & Stevens Chem. Corp. v. U.S. Consumer Prod. Safety Comm'n*,
585 F.2d 1382 (2d Cir. 1978)............................................................................................... 7

*Reyes v. United States Environmental Protection Agency*,
  991 F. Supp. 2d 20 (D.D.C. June 13, 2014).............................................................. 6
*United States Dep't of Justice v. Tax Analysts*,
  492 U.S. 136 (1989)............................................................................................... 7
*Whitaker v. Department of Commerce*,
  970 F.3d 200 (2d Cir. 2020).................................................................................... 6

Rules

Federal Rule of Civil Procedure 56 .......................................................................... 5

Defendant United States Department of State (the "State Department"), by its attorney, Damiam Williams, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

In their complaint (ECF No. 1) ("Complaint" or "Compl."), plaintiff Alec Ferretti and Reclaim the Records (collectively, "Plaintiff") commenced this action under the Freedom of Information Act ("FOIA") to compel the State Department to produce "a copy, in its entirety, of the index to deaths of Consular Reports of Deaths of a U.S. Citizen Abroad from 1975 - 2018 inclusive." (ECF No. 1-1); *see also* Compl. ¶ 9. The State Department conducted a reasonable search and determined that no responsive records exist. To the extent that Plaintiff's FOIA request amounts to a demand that the State Department create such an index, such a demand conflicts with FOIA's mandate that an agency not be compelled to create new documents to satisfy a FOIA request. Accordingly, this Court should grant summary judgment in the State Department's favor.

## BACKGROUND[1]

### A.    The State Department's Consular Reports of Deaths of a U.S. Citizen Abroad

A CRDA can only be created overseas at a U.S. embassy or U.S. consulate in the country the U.S. citizen died. *See* Declaration of Regina L. Ballard, dated January 22, 2024 ("Ballard Decl.") ¶ 8. The State Department currently estimates that there are at least 331,000 Consular

---

[1] While typically this district requires parties to submit Local Rule 56.1 statements in support of motions for summary judgment, " '[t]he general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment,' and Local Rule 56.1 statements are not required." *New York Times Co. v. U.S. Dep't of Justice*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012) (*quoting Ferguson v. F.B.I.*, No. 89-cv-5071 (RPP), 1995 WL 329307, at *2 (S.D.N.Y. June 1, 1995), aff'd 83 F.3d 41 (2d Cir. 1996)).

Reports of Deaths of a U.S. Citizen Abroad ("CRDAs") that exist in paper form. *See id*. ¶ 9. These paper records are stored at the Washington National Records Center (the "Records Center") of the U.S. National Archives and Records Administration ("NARA") in Suitland, Maryland. *Id*. They are generally organized by the date they are digitized and the unique identifier or batch number assigned to the group of archival materials they belong to that have been transferred to NARA. *Id*. The State Department does not have an accurate estimate of those paper records at this time because in order to arrive at such an estimate, a Department employee would need to travel to the Records Center and physically count each paper record in each box, as each box may contain a different number of records. *Id*.

Most of the 331,000 CRDAs that exist in paper form have been digitized.  However, the State Department does not maintain any index of, or "finding aid" for, these records. *See* Ballard Decl. ¶ 10. Counsel for Plaintiffs referred State Department counsel to a Systems of Records Notice ("SORN") from March 24, 2015, purporting to show that there currently exists "[a]n electronic index of Department of State Reports of Birth of U.S. Citizens Abroad, and Consular Reports of Death Abroad." *See id*. ¶ 11 & Exh. 3. While an index existed in the State Department's Passport File Miniaturization database ("PFM"), the PFM preceded and was later replaced by PIERS in 2000.  *See* Ballard Decl. ¶ 12. The PFM database is now defunct, and any electronic indices the PFM database employed are not available in PIERS and are otherwise not in existence today. *See id*. ¶ 13. Inquiries with the State Department's personnel with subject matter expertise, including in the Office of Consular Systems and Technology, concerning the Department's access to CRDAs, including their inclusion in PFM and PIERS over the years, as well as with their storage at the Records Center, confirm that the State Department has not maintained an index for CRDAs since PFM's replacement with PIERS. *Id*. All files likely to

contain relevant records were searched and yielded no such index or finding aid in any form, be it electronic or paper. *Id*.

PIERS's retrieving mechanism is different from PFM's. *See* Ballard Decl. ¶ 14. The State Department uses PIERS as a tool to allow State Department employees to answer questions relating to passport records. *Id*. PIERS does not contain any sort of "index" or list of passport records or CRDAs that a system user can pull, and that functionality has never been available to the State Department through PIERS. *Id*. Rather, a PIERS system user must input an individual's personal identifiable information ("PII")—such as name, date of birth, Social Security Number, place of birth, date of death, or place of death—to retrieve information from PIERS, up to a certain number of results beyond which no further results are shown even if they fit the criterion used. *Id*.

PIERS does not offer system users the capability to generate a list of CRDAs from a specific date to another specific date. *See* Ballard Decl. ¶ 14. Consequently, the term "electronic index" in the referenced SORN refers to the entirety of the collection of CRDAs as maintained in digital form in PIERS, and not to an index or list of CRDAs that is available to a system user. *See id*. ¶ 15. In short, while the State Department is able to retrieve some copy—whether electronic or paper—of CRDAs from 1975 to the present, they exist in the form of either individual paper records, each of which must be manually searched in boxes using PII, or as individual electronic records, each of which can only be retrieved from PIERS using PII. *See id*. ¶ 16.

Based on inquiries with the State Department personnel with subject matter expertise, including in the Office of Consular Systems and Technology, regarding whether an index could be generated using the State Department's current capability, there is no "backend" from which

the State Department may extract the entire database of CRDAs. *See* Ballard Decl. ¶ 17. The "backend" is different from the "frontend" in three important respects. *See id*. ¶ 18. Most importantly, the "backend" offers the ability to search with criteria that are additional to the ones available to a system user in the normal course of business. *Id*. There is also no numerical cap to the number of results returned. *Id*. However, such search results are only reference numbers to be used in PIERS, *i.e.*, the results contain no information about the record(s) being requested that could be used to generate an index or finding aid for all the CRDAs. *Id*. The backend capabilities are otherwise the same capabilities to which a system user already has access in the normal course of business. *Id*.

In sum, the State Department maintains neither an "index" in PIERS that State Department employees with appropriate access can pull, print, or otherwise generate that is responsive to the FOIA request, nor any "finding aid" for CRDAs. *See* Ballard Decl. ¶ 19.

## B.     The FOIA Request

On September 6, 2019, the State Department received Plaintiff Alec Ferretti's FOIA request to the State Department dated September 5, 2019, for "a copy of the Index or finding aid to the Reports of Death of a U.S. Citizen Abroad from 1975-present," which the State Department tracked internally using the number F-2019-09405 and subsequently FL-2023-00042 (the "FOIA request"). *See* Ballard Decl. ¶ 4 & Ex. 1; ECF No. 1-1. By letter dated April 24, 2023, the State Department informed Plaintiff that the State Department had not identified any records responsive to the FOIA request. *See* Ballard Decl. ¶ 7 & Ex. 2.

**ARGUMENT**

**THE COURT SHOULD GRANT SUMMARY JUDGMENT TO THE STATE DEPARTMENT BECAUSE THE AGENCY HAS DEMONSTRATED THAT ITS SEARCH WAS REASONABLE AND ADEQUATE**

**A.    Summary Judgment Standard**

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is the procedural vehicle by which most FOIA actions are resolved. *See, e.g.*, *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999); *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). "In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate*." Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 190 (2d Cir. 2012) (quoting *Carney*, 19 F.3d at 812). A search is judged by the efforts the agency undertook, not by its results. *See Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999); *see also N.Y. Times Co. v. U.S. Dep't of Justice*, 756 F.3d 100, 124 (2d Cir. 2014). The agency must simply demonstrate that its search was "reasonably calculated to discover the requested documents." *Grand Cent. P'ship*, 166 F.3d at 489. In other words, the search "need not be perfect, but rather need only be reasonable." *Id*. Generally, the agency need only provide "[a]ffidavits or declarations" with supporting facts to show that it has conducted an adequate search under FOIA. *Carney*, 19 F.3d at 812. Such affidavits or declarations are accorded a presumption of good faith, and the Court may award summary judgment on them alone. *Id*.

An agency may satisfy its burden of demonstrating an adequate search through "[a]ffidavits or declarations supplying facts indicating that the agency has conducted a thorough search." *Carney*, 19 F.3d at 812 (footnote omitted). When "'[i]t is clear beyond cavil that an agency cannot improperly withhold records that it does not maintain, and that 'where the Government's declarations establish that a search would be futile, the reasonable search required

5

by FOIA may be no search at all.'" *Whitaker v. Department of Commerce*, 970 F.3d 200, 207 (2d Cir. 2020) (quoting *MacLeod v. United States Department of Homeland Security*, No. 15-cv-1792 (KBJ), 2017 WL 4220398, at *11 (D.D.C. Sept. 21, 2017) (alterations omitted) (*quoting Reyes v. United States Environmental Protection Agency*, 991 F. Supp. 2d 20, 27 (D.D.C. June 13, 2014)); *see also Whitaker*, 970 F.3d at 208 ("We see no reason to depart from the sensible and persuasive approach employed by the courts that have considered this question, and we therefore conclude that an agency need not conduct a search that it has reasonably determined would be futile."); *Jenkins v. U.S. Dep't of Justice*, 263 F. Supp. 3d 231, 235 (D.D.C. 2017) (where an agency demonstrates it is unlikely to possess responsive records, it is not required to conduct a search); *Earle v. U.S. Dep't of Justice*, 217 F. Supp. 3d 117, 123–24 (D.D.C. 2016) (granting summary judgment for agency where declarant explained that the agency did not maintain the records sought); *Cunningham v. U.S. Dep't of Justice*, 40 F. Supp. 3d 71, 85–86 (D.D.C. 2014) (granting summary judgment for agency where the agency demonstrated that a search would be futile because it does not maintain the requested records*); Espino v. U.S. Dep't of Justice*, 869 F. Supp. 2d 25, 28 (D.D.C. 2012) (granting summary judgment to the agency where it submitted "sufficiently detailed and nonconclusory" declarations "to demonstrate the adequacy of its search"); *Amnesty Int'l USA v. CIA*, No. 07 Civ 5435 (LAP), 2008 WL 2519908, at *11 (S.D.N.Y. June 19, 2008) (no search required where declarations of agency officers reasonably describe that, based on their knowledge of their offices, they would not have responsive records); *Am.-Arab Anti-Discrimination Comm. v. US. Dep't of Homeland Sec.*, 516 F. Supp. 2d 83, 88 (D.D.C. 2007) (FOIA does not require a search for records an agency does not maintain).

**B.      The State Department's Search Was Reasonable and Adequate**

The State Department's detailed declaration establishes that the State Department

satisfied its obligation to conduct a search reasonably calculated to uncover any records

responsive to the FOIA request. The State Department inquired with State Department personnel

with subject matter expertise, including in the Office of Consular Systems and Technology,

whether the requested index or finding aid existed and confirmed that the State Department does

not maintain, in paper or electronic form, a "index" or "finding aid" for such records. *Id.* ¶¶ 8-19,

21. As all files likely to contain relevant records were searched and yielded no such record, the

Department confirmed that an index or finding aid for CRDAs simply does not currently exist in

any form, be it electronic or paper. *Id*. at ¶¶ 13, 15, 19, 21-22.

**C.      Responding to The FOIA Request Would Require the State Department to Create a
          Record, Which Cannot Be Compelled Under FOIA**

To the extent Plaintiff is requesting that the State Department create such an index or

finding aid, the Complaint should be dismissed. To qualify as an agency record under FOIA, a

record must satisfy "two requirements": the agency must "either create or obtain" the record, and

"the agency must be in control of the requested material at the time the FOIA request is

made." *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144 (1989). FOIA "does not

obligate agencies to create or retain documents; it only obligates them to provide access to those

which it in fact has created and retained." *Id.* It is well-established that agencies are not required

to "create" records in response to a FOIA request. *See, e.g.*, *Forsham v. Harris*, 445 U.S. 169,

186 (1980) ("FOIA imposes no duty on [an] agency to create records."); *Pierce & Stevens Chem*.

*Corp. v. U.S. Consumer Prod. Safety Comm'n*, 585 F.2d 1382, 1388 (2d Cir. 1978) ("[U]nder the

FOIA, an agency does not rewrite a document or create informational material. It discloses

existing documents, which it has already prepared."). Accordingly, FOIA does not require the State Department to create an index or finding aid for CRDAs where no such record exists.

As explained by the State Department's declarant, requiring the State Department to produce an index or finding aid for CRDAs would require the State Department to undertake an unduly burdensome task of creating a new record that does not currently exist. *See* Ballard Decl. ¶ 20; *id*. at ¶¶ 13, 15, 19, 21-22. FOIA simply does not require agencies to undertake that burden. The work that would be required to respond to the FOIA request by genereting indexes or finding aid for CRDAs, even if limited to CRDAs from 1975 to the present, underscores that Plaintiff is seeking the creation of new records.

The Ballard Declaration explains that there currently is no mechanism in place for the State Department to create such an index or finding aid electronically. Specifically, the State Department does not maintain an index or finding aid in PIERS that a user can simply pull, print or otherwise provide to Plaintiff that is responsive to the FOIA request. *See* Ballard Decl. ¶¶ 13-20. Nor does PIERS offer system users the capability to generate a list of CRDAs from a specific date to another specific date. *Id*. at ¶ 14.

It is well-established that, when a FOIA request seeks an index or list, an agency is not required to compile such an index if it does not already exist. *See, e.g., Hawkinson v. Executive Office for Immigration Review*, No. 21-11817-MPK, 2023 WL 5153768, at *9 (D. Mass. Aug. 10, 2023) (observing that "courts have repeatedly found that agencies are excused from creating files or database indices for FOIA requesters," and holding "Defendant was therefore not obligated to create a new index file in order to search the BIA Shared Drive by keyword as plaintiff requested." (citing cases)); *Landmark Legal Foundation v. Department of Justice*, 211 F.Supp.3d 311, 318 (D.D.C. 2016) ("Plaintiff may want a list of DOJ employees who use

personal email for Department business, but FOIA only entitles it to such a list if the Department

already has one—it does not require the Department to create one.").

As explained by a district court considering an analogous FOIA request and holding that

it amounted to the creation of a new record:

> *Producing a listing or index of records . . . is different than producing particular*
> *points of data (i.e., the records themselves).* This is because a particular listing
> or index of the contents of a database would not necessarily have existed prior to a
> given FOIA request . . . .The same would be true of paper, rather than electronic,
> records. For example, if a FOIA request sought 'an inventory of all non-
> electronic records created in 1962 regarding the Cuban Missile Crisis,' an agency
> need not create an inventory if one did not already exist, though the agency
> would need to release any such non-electronic records themselves if they were requested
> and were not exempt from disclosure. Therefore, a FOIA request for a listing or
> index of a database's contents that does not seek the contents of the database, but
> instead essentially seeks information about those contents, is a request that
> requires the creation of a new record, insofar as the agency has not previously
> created and retained such a listing or index.

*Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 271 (D.D.C. 2012) (citation omitted;

emphasis added).[2] Significantly, Plaintiff's FOIA request here did not seek production of any

CRDAs; rather, Plaintiff specifically sought the index or finding aid for such records, which does

not exist. *See, e.g., People for the Am. Way Found. v. U.S. Dep't of Justice*, 451 F.Supp.2d 6, 15

(D.D.C. 2006) (producing a "list of records returned from [a database] search" is "something that

FOIA does not mandate" because "the list was not previously created or obtained by the agency"

---

[2] In this case, a non-profit had challenged the refusal of the Central Intelligence Agency ("CIA")
to turn over records in response to plaintiff's request under FOIA. Among these were "(1) a
request for 'database listings of all FOIA requesters from Fiscal Years 2008-2010 according to
the fee categories to which CIA assigned them,' and (2) a request for 'a record that would
indicate the ten individuals responsible for the most FOIA requests submitted (each) in Fiscal
Years 2008, 2009, and 2010.'" *Id*. at 268-69. The CIA declined to produce these records because
its "record systems are not configured in a way that would allow [it] to perform a search
reasonably calculated to lead to the responsive record without an unreasonable effort.'" *Id*. at
245. The CIA contended that "processing requests for database listings would (a) require it to
create new records, as opposed to merely producing preexisting records and/or (b) require it to
conduct research, as opposed to merely performing a search." *Id*. at 269.

and "an order that defendant produce such a list would be tantamount to requiring the defendant

to create an agency record"). *Compare Johnson v. Central Intelligence Agency*, 330 F. Supp. 3d

628, 643 (D.Mass. 2018) ("Thus, while an agency is not compelled to create a new list for a

requester, searching for a list that already exists is discoverable through FOIA. The list sought by

Dr. Johnson . . . already exists and must be produced. She is not asking the Agency to create a

list of user applications, but rather seeks the currently existing list of user applications available

on [the CIA's] Twitter's website [account].").

## CONCLUSION

For the foregoing reasons, defendant State Department respectfully requests that the

Court grant summary judgment in its favor pursuant to Rule 56 of the Federal Rules of Civil

Procedure.

Dated:  January 22, 2024
         New York, New York

> DAMIAN WILLIAMS
> United States Attorney for the
> Southern District of New York
> *Attorney for Defendant*
>
> By:      */s/ Joseph A. Pantoja*
>       JOSEPH A. PANTOJA
>       Assistant United States Attorney
>       86 Chambers Street, 3rd Floor
>       New York, New York 10007
>       Tel.:    (212) 637-2785
>       Fax:    (212) 637-2702
>       Email: joseph.pantoja@usdoj.gov