**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RECLAIM THE RECORDS and ALEC
FERRETTI,

                    Plaintiffs,

    - against -

UNITED STATES DEPARTMENT OF STATE,

                 Defendant.

                          **23 Civ. 01529 (VEC)**

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
CROSS-MOTION IN SUPPORT OF PLAINTIFFS' SUMMARY JUDGMENT MOTION**

March 5, 2024

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
(212) 490-0400
*Attorneys for Plaintiffs*

TABLE OF CONTENTS

I. Preliminary Statement ................................................................................................. 1

II. Statement of Facts ..................................................................................................... 2

III. Legal Standard ......................................................................................................... 5

IV. Argument ................................................................................................................. 6

    a.  Standard of Review .............................................................................................. 6

    b.  Reasonableness of Search ................................................................................... 8

        i.  The ability to locate a single record among 331,000 digitized paper records strongly suggests the availability of an index. .................................................................. 9

        ii.  The definition of "index" should be construed liberally ............................................ 10

        iii.  Database entries comprising an electronic index exist, are relevant to Plaintiff's request and should be searched. .................................................................... 12

        iv.  The Department database can and must export data relevant to Plaintiff's request. ... 12

        v.  The pool of potential records subject to a search is much larger than what is described by Defendant ............................................................................................ 14

    c.  Providing an index utilizing existing data does not require creation of a new record ...... 15

V. Conclusion ............................................................................................................... 19

# Table of Authorities

**Cases**

*Am. Civil Liberties Union Immigrants' Rights Project v. United States Immigration & Customs Enforcement*, 58 F.4th 643 (2d Cir. 2023) ........................................................... 12, 16

*Amnesty Int'l USA v. C.I.A.*, 728 F.Supp.2d 479 (S.D.N.Y. 2010) .............................................. 11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................ 5

*Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067 (2d Cir. 1993) ........................................................... 6

*Carney v. U.S. Dep't of Justice*, 19 F.3d 807 (2d Cir. 1994) ....................................................... 6

*Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473 (2d Cir. 1999) .............................................. 6

*Hawkinson v. Executive Office for Immigration Review*,
No. 21-11817-MPK, 2023 WL 515768 (D. Mass. Aug 10, 2023) .......................................... 18

*Immigrant Def. Project v. United States Immigration & Customs Enf't*,
208 F. Supp. 3d 520 (S.D.N.Y. 2016) ................................................................................. 7, 11

*Knight First Amendment Inst. at Columbia Univ. v Ctrs. for Disease Control & Prevention*,
560 F. Supp. 3d 810 (S.D.N.Y. 2021) ...................................................................................... 8

*Landmark Legal Foundation v. Department of Justice*, 211 F. Supp. 3d 311 (D.D.C. 2016) ...... 18

*Local 3, Int'l Bhd. of Elec. Workers v. NLRB*, 845 F.2d 1177 (2d Cir. 1988) .............................. 6

*Long v. OPM*, 692 F.3d 185 (2d Cir. 2012) ................................................................................ 6

*NAACP Legal Def. & Educ. Fund, Inc. v. Dep't of Justice*,
463 F. Supp. 3d 474 (S.D.N.Y. 2020) ......................................................................... 8, 10, 15

*Nat'l Day Laborer Org. Network v. United States Immigration & Customs Enforcement Agency*,
877 F. Supp. 2d 87 (S.D.N.Y. 2012) ........................................................................... 7, 13, 15

*Nat'l Sec. Counselors v. Cent. Intelligence Agency*, 898 F.Supp.2d 233 (D.D.C. 2012) ....... 16, 18

*People for the Am. Way Found. v. U.S. Dep't of Justice*, 451 F.Supp.2d 6 (D.D.C. 2006) ......... 19

*Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79  (2d Cir. 2004) ............................................... 6

*Rabin v. United States Dep't of State, CIA*, 980 F. Supp. 116  (E.D.N.Y. 1997) .......................... 6

*SafeCard Servs., Inc. v. SEC*, 288 U.S. App. D.C. 324, 926 F.2d 1197 (1991) ........................... 7

*United States DOJ v. Julian*, 486 U.S. 1 (1988) ................................................................ 6

*United States v. Diebold, Inc.*, 369 U.S. 654 (1962) ........................................................ 5

*Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241 (2d Cir. 2004) ...................... 6

*Whitaker v. Dep't of Commerce*, 970 F.3d 200 (2d Cir. 2020) ...................................... 8

**Statutes**

5 U.S.C. §§552 *et seq* ...................................................................................................... 1

Pub. L. No. 104-231, 110 Stat. 3048 (1996) .................................................................. 15

**Rules**

Fed. R. Civ. P. 56 ............................................................................................................. 6

# I. Preliminary Statement

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §§552 *et seq.*, seeking, in response to a request by Plaintiff Alec Ferretti, the production of an index or finding aid to Consular Reports of Deaths Abroad ("CRDAs") from between 1975 and 2019, maintained and improperly withheld by Defendant United States Department of State ("The Department" or "DOS"). This action seeks the production of the agency-created basic index or internal finding aid to these records, whether that index exists on paper or as a modern textual database or both, and does not seek the release of any actual CRDAs that were indexed.

Defendant claims not to have a finding aid or index that would allow a Department user to locate an individual record, but curiously can locate copies of the nearly 331,000 CRDAs that it has digitized from paper originals, seemingly without any kind of index. Defendant provides minimal detail as to any search terms used in its inquiry, which may indicate a reliance on a now-defunct document format and, accordingly, an improperly narrow search.

Defendant acknowledges it maintains a database containing the records Plaintiff Ferretti requested, including the very data terms provided in his request. Defendant then describes an elaborate search process that it insists would be necessary to carry out Plaintiff's request, but which fails to use more individualized processes more likely to produce the requested data. Defendant offers a technological excuse for not providing the responsive records, claiming that the database does not permit the bulk export of responsive records. This claim is contradicted by an internal agency document that was shared with Defendant during the extended discussions between counsel that occurred after initiating litigation.

Finally, Defendant references only CRDAs that originated as paper documents, and does not discuss having searched any CRDAs that were "born digital" which would also be subject to Plaintiff Ferretti's request. Defendant does not specify when CRDAs stopped originating in paper

form, though given the record of digitization stated in Defendant's papers, it seems likely that CRDAs began originating in digital form by the year 2000. Omitting nearly twenty years' worth of such records from Defendant's search would severely and arbitrarily limit the scope of the search and the adequacy of the response.

Plaintiff opposes Defendant's motion for summary judgment because Defendant does not demonstrate entitlement to judgment as a matter of law. The contradictions, inconsistencies and shortcomings in Defendant's presentation show Defendant has not met its burden at summary judgment.

Plaintiff seeks an injunction requiring Defendant to release the requested records, which consist of an index to all Consular Records of Deaths Abroad created by the State Department from 1975 to September 5, 2019, preferably as the underlying data comprising the index.

Plaintiff moves for summary judgment because Defendant has failed to claim any valid exemption for the requested records and therefore must disclose the data.

## II. Statement of Facts

Plaintiff Reclaim the Records, of which Plaintiff Alec Ferretti is a board member, is a non-profit group of genealogists, historians, journalists, teachers, and open government advocates who use Freedom of Information requests to acquire genealogical records from government sources, including government archives. They then upload those records to the internet without paywalls, making them freely available to the public. Through these efforts, they have successfully reclaimed millions of historical and genealogical records for free public use.

On September 5, 2019, Plaintiff Ferretti submitted a Freedom of Information Act request to the DOS through its online FOIA portal ("the Request").[1] Declaration of David B. Rankin

---

[1] Plaintiffs' Complaint (Dkt. 1), at ¶¶8-10, conflates the September 5, 2019 Request with an earlier but substantially identical request Plaintiff Ferretti sent by mail on May 1, 2019 which was never acknowledged and possibly never

("Rankin"), Exhibit 1 ("Ex. 1"). The Request asked for "a copy of the Index or finding aid to the Reports of Death of a U.S. Citizen Abroad" for the time period January 1, 1975 through September 5, 2019 (the date of the Request). *Id*. It described the requested index in terms of functionality: a document which would allow "a clerk to search an alphabetized or sequential list of deaths from a given year in order to find the page number of the sought after record". *Id.* Summarizing the substance of the Request, Plaintiff Ferretti wrote "I would like to know whose Reports of deaths are in possession of the State Department, and when those people died." *Id*. The Request contemplated that the CRDAs may, in part, have been "born digital," and stated a preference for a digital database of an index to the death reports: "If there has been a database created in the modern day of an index to the deaths (such as a spreadsheet), I would be most interested in obtaining such a file." *Id.*

On February 21, 2020, the Department acknowledged receipt of the Request via email and assigned it Reference Number F-2019-09405. Rankin Ex. 2. The Department's email stated they would not be able to respond to the request within 20 days due to "unusual circumstances," including "the need to search for and collect requested records from other Department offices or Foreign Service posts." *Id.*

On November 13, 2020, Plaintiff Ferretti emailed a request for a status update on the Request. Rankin Ex. 3. A week later, on November 20, 2020, the Department responded that the request was in process, but provided no date by which Plaintiffs could expect completion of the Request. *Id.*

---

received by the Department. While the quoted excerpt at ¶9 of the Complaint does not appear verbatim in the September 5, 2019 Request, the substance of the Request is the same except for an additional year in the time range. Plaintiff notes that while the Defendant's Memorandum cites to the May 1, 2019 request in the Preliminary Statement (Dkt. 32, p. 1), the same Memorandum treats the September 5, 2019 version as the operative Request in this matter (*id*., p. 4), consistent with Declarant Ballard's analysis (Dkt. 31, ¶4). It is Plaintiffs' view that what is being sought in this matter, and the arguments supporting an Order as to such, are identical despite the slight language differences in the two requests. Thus, "the Request" will hereafter refer to the September 5, 2019 request submitted online.

On April 24, 2023, two months after Plaintiffs issued the summons in the instant litigation on February 28, 2023, and more than three and a half years after the initial request, the Department finally emailed Mr. Ferretti, stating that it "has located no responsive records subject to the FOIA." Rankin Ex. 4. DOS explained:

> Please note that the Department does not maintain an index or search aid for Consular Records of Deaths of a U.S. Citizen Abroad ("CRDAs"). The system where CRDAs are stored does not contain an index or spreadsheet or allow for the extraction and compilation of certain information from CRDAs stored in the system. Rather, the Department can only retrieve CRDAs stored in the system manually and one-at-a-time, meaning that the Department must search the system using personally identifiable information, including the name and date of birth of an individual, to locate a particular CRDA.

*Id.* The position taken by the Department runs counter to Plaintiffs' understanding of how the CRDA records are stored and is contradicted by several documents found by Plaintiffs and provided to Defendant.

During discussions between counsel regarding the contents and capacities of the Department's database, Plaintiffs supplied Defendant with an excerpt from the Federal Register (Vol. 80, No. 56 [March 24, 2015] at 15653-60). Rankin Ex. 5. In the relevant entry related to Defendant, Public Notice 9068 – Privacy Act; System of Records: Passport Records, State-26 ("SORN") – it is noted that "Passport Services maintains U.S. passport records for passports issued from 1925 to present, as well as vital records related to births abroad, deaths, and witnesses to marriage abroad." *Id.*, p. 2. When enumerating the categories of records included in the passport records system, it includes "(i) Reports of Death of a U.S. Citizen Abroad," as well as "[a]n electronic index of Department of State Reports of Birth of American Citizens Abroad, and Consular Reports of Death Abroad." *Id.*, pp. 2-3. It is noted that these records are stored by "[h]ard copy and electronic media." *Id.* at 5.

Plaintiffs also supplied Defendant with a Privacy Impact Assessment ("PIA") for the Department's "Passport Information Electronic Records System (PIERS)," which is dated 10/2020. <u>Rankin Ex. 6</u>. This document, downloaded from the Department of State website,[2] confirms that the database includes "Consular Records of Death Abroad," *id.*, pp. 1, and "provides structured query capabilities to the data maintained within its environment." *Id.* The PIA contains a section describing how information contained in the PIERS database can be shared, with whom and by what mechanisms the information can be shared, and what safeguards are in place to address privacy concerns. *Id.*, pp. 7-9. It also discusses the multiple user roles and access permissions available to Department employees using the database (*id.*, pp. 13-15), stating that "[a]n individual's job function determines what data can be accessed" and that "[a]ccess is role based and the user is granted only the role(s) required to perform officially assigned duties." *Id*, p. 14.

### III. Legal Standard

In ruling on a motion for summary judgment and assessing whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (*per curiam*) (inferences to be drawn from the underlying facts revealed in materials such as affidavits, exhibits, and depositions, must be viewed in the light most favorable to the party opposing the motion).

It is the initial burden of a movant to come forward with evidence on each material element of his claim or defense, demonstrating that he or she is entitled to relief as a matter of law. *Vt.*

---

[2] See https://www.state.gov/wp-content/uploads/2020/11/Passport-Information-Electronic-Records-System-PIERS-PIA.pdf, *last accessed* February 18, 2024.

*Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). The non-movant carries only "a limited burden of production," but "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84 (2d Cir. 2004) (quoting *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993)).

## IV. Argument

### a. Standard of Review

"FOIA was enacted to promote honest and open government, and to ensure public access to information created by the government in order to hold the governors accountable to the governed." *Long v. OPM*, 692 F.3d 185, 190 (2d Cir. 2012) (internal citations omitted). As the United States Supreme Court has put it, "[t]he mandate of the FOIA calls for broad disclosure of Government records, and for this reason we have consistently stated that FOIA exemptions are to be narrowly construed." *United States DOJ v. Julian*, 486 U.S. 1, 8 (1988) (internal citations omitted). Regarding disclosure, "all doubts [are to be] resolved in favor of disclosure." *Local 3, Int'l Bhd. of Elec. Workers v. NLRB*, 845 F.2d 1177, 1180 (2d Cir. 1988).

Most FOIA actions are resolved on summary judgment pursuant to Fed. R. Civ. P. 56. *See, e.g.*, *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999); *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). "In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). "In evaluating whether to grant a motion for summary judgment in a FOIA action, a district court must review the facts in a light most favorable to the requestor." *Rabin v. United States Dep't of State, CIA*, 980 F. Supp. 116, 120 (E.D.N.Y. 1997).

"A withholding agency that has fulfilled its substantive obligation to produce responsive documents under FOIA can demonstrate the adequacy of its search at the summary judgment stage through the submission of detailed declarations describing the search procedures used. . . . Agency affidavits describing the underlying searches are accorded a presumption of good faith." *Immigrant Def. Project v. United States Immigration & Customs Enf't*, 208 F. Supp. 3d 520, 526-27 (S.D.N.Y. 2016) (internal citations omitted).

"Summary judgment is inappropriate 'where the agency's response raises serious doubts as to the completeness of the agency's search, where the agency's response is patently incomplete, or where the agency's response is for some other reason unsatisfactory.' In addition, plaintiffs may defeat summary judgment if they can show 'some tangible evidence' that defendants have not satisfied their burden. Where 'an agency has not satisfied its burden, a showing of bad faith is not necessary' in order to defeat a motion for summary judgment." *Nat'l Day Laborer Org. Network v. United States Immigration & Customs Enforcement Agency*, 877 F. Supp. 2d 87, 96 (S.D.N.Y. 2012) (internal citations omitted).

"The adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Id*. at 96. "When a plaintiff questions the adequacy of the search an agency made in order to satisfy its FOIA request, the factual question it raises is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." *SafeCard Servs., Inc. v. SEC*, 288 U.S. App. D.C. 324, 926 F.2d 1197, 1201 (1991).

"In applying this reasonableness standard, courts consider, among other things, 'the search terms and type of search performed' and the 'nature of the records system or database searched.' … Search terms must 'be reasonably tailored to uncover documents responsive to a FOIA

request.'" *NAACP Legal Def. & Educ. Fund, Inc. v Dep't of Justice*, 463 F. Supp. 3d 474, 484 (S.D.N.Y 2020).

"Although an agency need not expand a search beyond the four corners of the language of the request, it must 'adher[e] to the full scope or the precise language of the plaintiff's request'. And, most importantly, an agency must 'construe [FOIA requests] liberally.'" *Knight First Amendment Inst. at Columbia Univ. v Ctrs. for Disease Control & Prevention*, 560 F. Supp. 3d 810, 821 (S.D.N.Y. 2021) (internal citations omitted).

### b. **Reasonableness of Search**

Defendant's papers do not indicate that any search was performed. Instead, they deny the existence of an index or finding aid while describing how the Passport Information Electronic Record System database ("PIERS") itself serves as that index, but lacks the technical capacity to output the data requested by Plaintiff. They also describe paper records that have been digitized, but ignore potentially responsive records that originated in digital form, thus limiting the pool of records subject to the search request. None of Defendant's recitations show that a search was actually performed, much less one that could be "reasonably expected to produce the information requested," *Whitaker v. Dep't of Commerce*, 970 F.3d 200, 206-07 (2d Cir. 2020). Instead, in conclusory language, the Declarant asserts simply that "[a]ll files likely to contain relevant records were searched and yielded no such record." Dkt. 31, ¶13. This conclusory language "raises serious doubts as to the completeness of the agency's search." *NAACP Legal Def. & Educ. Fund, Inc. v Dep't of Justice*, 463 F. Supp. 3d 474, 483 (S.D.N.Y. 2020), *citing Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency* , 877 F. Supp. 2d 87, 96 (S.D.N.Y. 2012).

> ### i. *The ability to locate a single record among 331,000 digitized paper records strongly suggests the availability of an index.*

Although Agency declarations are to be accorded a presumption of good faith, it defies credulity to assert that a single record out of 331,000 can be located without the use of a finding aid or index.

Declarant Ballard states that the Department does not maintain a "finding aid" or index for the nearly 331,000 paper CRDAs that have been digitized, Dkt. 31, ¶10, but also that the Department is able to retrieve "some copy" of CRDAs from 1975 to the present, either as a paper record that must be manually searched for in boxes that are not organized by personally identifying information (PII),[3] or as an individual electronic record that can be retrieved through PIERS using PII. *Id.*, ¶16. The Declarant sheds no light on <u>how</u> an individual paper CRDA record could be located among 331,000 such records, only stating that it can be done. She also reveals nothing as to how the digitized versions of the paper CRDA records are organized, whether and how their content is searchable, and most importantly whether those records can be searched by PII.

This absence of detail leaves unresolved questions about how a search of the digitized paper records for a specific CRDA could be conducted in the regular course of Department business. Without an index or finding aid, a Department employee would have no way of knowing where in the 331,000 digitized paper records to begin her search. The Declarant notes that the paper records themselves are organized by the date they were digitized and the unique identifier or batch number assigned to the group of archival materials they belong to. *Id.*, ¶9. If the personal identifying information in PIERS corresponds to a reference number associated with the digitized

---

[3] Plaintiff notes an apparent contradiction between Defendant's assertion in their Memorandum that "individual paper records … must be manually searched in boxes <u>using PII</u>," Dkt. 32, p. 3 (emphasis added), and the Declarant's statement that "individual paper records … must be manually searched in boxes <u>that are not organized by PII</u>," Dkt. 31, ¶16 (emphasis added). This contradiction as to a fundamental organizing principle of Defendant's records raises serious doubts as to the adequacy of any search performed here.

paper record – a significant detail not clarified by the Declaration – this would function as a finding aid, and would be responsive to the Request.

To put it more crisply, the Declarant states that all of the personally identifying information about the subject of a CRDA – their name, birth and death dates, and birth and death locations – are associated with a unique reference number for that CRDA in PIERS, and can be used to find those records. Dkt. 31, ¶¶9, 14, 18. This indicates that in the underlying data table, each of those pieces of information are linked together in an electronic format. Those data elements being linked together are what allow a system user to find a CRDA record, and thus comprise an index to the full set of CRDA records. That index can and should be produced under FOIA.

The lack of explanation of how a record can be located without an index or finding aid leaves an unresolved gap in Defendant's motion papers. Viewed in a light most favorable to the non-movant, this open question alone should justify denial of Defendant's motion. At minimum, this gap defeats any claim by Defendant to have conducted a search "reasonably tailored to uncover documents responsive to a FOIA request." *NAACP Legal Def. & Educ. Fund, Inc.*, 463 F. Supp. 3d at 484.

### ii. The definition of "index" should be construed liberally.

Defendant does not describe what search criteria, if any, were used to fulfill the Request, making it difficult to assess the adequacy of any search conducted. While the Declarant asserts that an index existed in the earlier but now-defunct Passport File Miniaturization database ("PFM") (Dkt. 31, ¶12), there is no description of the format of that index, such as whether it was a separate document, whether it was digitized from a paper document like other PFM files, or how the information it contained was organized. This omission is relevant to the extent that the Department's fruitless search may have been for a document assembled in the same format. However, changes in the way the information was organized by the Department, from paper

records to PFM to PIERS, strongly suggest that the format of an index used to find CRDA records within the PIERS database may have changed as well. Searching for the wrong kind of document will *ipso facto* achieve inadequate results.

Defendant cannot rely on a narrow definition of "index," as they seem to do here.  An index is not merely a document specifically containing that word in its title or strictly following the format and substance of an older document. The Circuit mandates a liberal construction of the search terms used. *Amnesty Int'l USA v. C.I.A.*, 728 F. Supp. 2d 479, 498 (S.D.N.Y. 2010); *Immigrant Def. Project v. United States Immigration & Customs Enf't*, 208 F. Supp. 3d 520, 526 (S.D.N.Y. 2016).

Plaintiff Ferretti's Request suggested, as a typical example of the data he sought, an alphabetized or sequential list of deaths for Departmental use in locating the full record of the death abroad. Rankin Ex. 1. In essence, he was describing a document extracting key terms from a series of individual records and organizing those key terms in some logical, relational sequence or table by which each record could be located. A search using this broader concept of an "index" based on its function would more reasonably be expected to produce the information requested. While it is doubtful that such an index exists in printed form, Defendant confirms that the electronic data entries which would comprise that index exist[4], and the materials searched should include those data tables.

Defendant helpfully expands the term "electronic index" in the SORN to refer to the "entirety of the collection of CRDAs as maintained in digital form in PIERS," rather than to a separate document somehow indexing this index. Dkt. 31, ¶15. Insofar as Defendant conceives of the PIERS database itself as a massive index of the data it contains, this is precisely the information

---

[4] See discussion of the personally identifying information maintained by PIERS at subsection iii, page 12, *infra*.

the Request seeks, and should be produced rather than withheld, even if this requires the application of a search query to the PIERS database in order to extract the relevant data points. See *Am. Civil Liberties Union Immigrants' Rights Project v United States*, 58 F.4th 643, 659 (2d Cir. 2023) ("we are mindful that Congress foresaw the need for an agency to apply 'codes or some form of programming' to retrieve records in a requested electronic format, and expressly stated that the use of such codes or programming would 'not amount to the creation of records'").

Defendant should not be permitted to rely on an overly narrow search query to justify its failure to make a meaningful search calculated to locate responsive records, or to avoid searching in electronic locations where responsive records are likely to be found.

### iii. Database entries comprising an electronic index exist, are relevant to Plaintiff's request and should be searched.

In discussing the limitations of the PIERS database, Defendant describes how

> a system user must input an individual's personally identifiable information – such as a name, date of birth, […] date of death, or place of death – to retrieve information from PIERS.

Dkt. 32, p. 3. These PII categories of data retained in PIERS map neatly onto Plaintiff Ferretti's Request seeking

> a database extract of the name of the decedent, along with the date and location of death.

Rankin Ex. 1. This data, together with any corresponding record locators that may be associated with the PII, would comprise an index of the CRDAs, and should clearly have been searched and included in Defendant's response, and must now be produced.

### iv. The Department database can and must export data relevant to Plaintiff's request.

Declarant Ballard implausibly asserts that a PIERS system user is incapable of retrieving more than a set number of records responsive to a given query, even if additional records would be responsive to the search criteria, and that system users cannot search for CRDAs by a date

range. Dkt. 31, ¶14. She goes on to suggest these limitations may be alleviated by a "backend" search, *id.*, ¶18, but cautions that even a "backend" search would not be able to "extract the entire database of CRDAs." *Id.*, ¶17.

The terms "backend" and "frontend" are not defined in Defendant's papers, and it is clear that Declarant Ballard's testimony here, which is "[b]ased on inquiries with the Department personnel with subject matter expertise," *id.*, is not based on her own first-hand knowledge of Department systems. This ambiguity and omission again "raises serious doubts as to the completeness of the agency's search," *Nat'l Day Laborer Org. Network v. United States Immigration & Customs Enforcement Agency*, 877 F. Supp. 2d 87, 96 (S.D.N.Y. 2012), which must be resolved in favor of the nonmoving party. *Id.* at 95.

It is Plaintiffs' understanding that "frontend" refers to the database management system and the user interface by which a Department employee gains access to the data contained in PIERS, and the "backend" is that full set of data and data tables. Defendant's notion that the PIERS database is incapable of searching for, sorting and exporting specified categories of data, if true, would be astonishing.[5] It would significantly limit the capacity of PIERS to share its data (or selected subsets of its data) with other systems, or to back up its contents in case of a mechanical failure or other vulnerability. A much more credible scenario is described by the PIERS Privacy Impact Assessment. Rankin Ex. 6. That document demonstrates that the database is equipped to share data as needed (listing at pages 7-9 the offices and systems with which information in the PIERS system is shared). The document explains that the specifics of an individual user's access to the database depends on that user's job functions (*id.*, p. 14) and level of clearance (*id.*, p. 9), and that these access levels are set by supervising officers (*id.*, p. 9). Three general user roles are

---

[5] For a general overview of the basic functionality of electronic databases, please see *Encyclopedia Britannica*, "database", Feb. 18, 2024, https://www.britannica.com/technology/database (last accessed March 5, 2024).

listed – PIERS OpenNet users, system administrators, and database administrators – with varying types of access available to each role. *Id*., pp. 13-14.

Thus, Defendant's own document explains that the access provided to a system user in the normal course of business – which Declarant Ballard describes as "answering file questions relating to passport records" (Dkt. 31, ¶18) – is tailored to the needs of those tasks. If Plaintiff's Request requires a different set of tasks distinct from those of a daily system user – such as using a broader set of search parameters and being able to export the resulting data – supervising officers should be able to determine and assign individualized access levels consistent with this task, and in conformity with FOIA. Defendants should not be permitted to use a limited-access permissions setting in its own database as an excuse for withholding its responsive data.

### v. *The pool of potential records subject to a search is much larger than what is described by Defendant*

Defendant, through the Ballard Declaration, explains that "CRDAs are created when a U.S. citizen passes away overseas and the passing is reported to a U.S. embassy or consulate." Dkt. 31, ¶8. They are maintained as paper records and in the PIERS electronic database. *Id*. While the Declarant estimates that at least 331,000 CRDAs exist in paper form, *id*., ¶9, and that most of these have been digitized, *id.*, ¶10, there is no discussion as to how many additional CRDAs originated in digital form, as distinct from originating in paper form and being digitized later. Insofar as the adoption of the PIERS electronic database in 2000 replaced an earlier electronic database, *id*., ¶12, it is reasonable to assume that CRDAs have originated in electronic form since at least 2000, if not earlier. Accordingly, it is reasonable to deduce that many more than 331,000 CRDAs exist in Department databases, whether in PIERS or in some other system, and that any additional "born-digital" CRDAs created prior to September 5, 2019 are also subject to search in response to the

Request. Defendant does not describe any search of these additional CRDAs, and is accordingly "patently incomplete". *NAACP Legal Def. & Educ. Fund, Inc*, 463 F. Supp. 3d at 483.

Additionally, the Systems of Records Notice from March 24, 2015, Rankin Ex. 5, references both "(i) Reports of Death of a U.S. Citizen Abroad," *id.*, p. 2, and "Consular Reports of Death Abroad," *id.*, p. 3. While the slight difference in nomenclature might be insignificant, it may also indicate separate fields of record-keeping which would be responsive to Plaintiff's Request, and would therefore increase the pool of records that need to be searched in response to the Request.

"[T]he government is not required to search only the files … 'most likely' to have responsive records; it must also search other locations that are reasonably likely to contain records." *Nat'l Day Laborer Org. Network v. United States Immigration & Customs Enforcement Agency*, 877 F. Supp. 2d 87, 98 (S.D.N.Y. 2012). Defendant cannot assert that all files likely to contain relevant records were searched when the description of the records searched omits locations where a substantial number of additional records may be found.

### c. Providing an index utilizing existing data does not require creation of a new record

As stated, Plaintiff Ferretti's underlying FOIA request contemplated a "database extract of the name of the decedent, along with the date and location of death," stating a preference for a spreadsheet format. Rankin Ex. 1.  Such a document may be extracted from a database maintained by Defendant. Extracting the specified data, and providing it in a form requested by the Plaintiff, would not entail the creation of a new document, as Defendant argues, but would be well within the requirements of FOIA as modified by the 1996 Electronic Freedom of Information Act Amendments ("E-FOIA Amendments"), Pub. L. No. 104-231, 110 Stat. 3048 (1996).

The E-FOIA Amendments "make plain that the threshold 'record' requirement for FOIA, as well as that Act's full-disclosure, narrow-exemption philosophy, applies equally in the

electronic and the physical contexts." *Am. Civil Liberties Union Immigrants' Rights Project v. United States Immigration & Customs Enforcement*, 58 F.4th 643, 653 (2d Cir. 2023). They further require responding agencies to produce "a responsive 'record in any form or format requested by the person if the record is readily reproducible in that form or format'," *id.*, and "to make 'reasonable efforts to search for the records in electronic form or format'," *id.* Finally, the need to employ "the application of codes or some form of programming to retrieve the information" would "not amount to the creation of records." *Id. See also Nat'l Sec. Counselors v. Cent. Intelligence Agency*, 898 F. Supp. 2d 233, 270 (D.D.C. 2012) ("sorting a pre-existing database of information to make information intelligible does not involve the creation of a new record … Sorting a database by a particular data field (*e.g.* date, category, title) is essentially 'the application of codes or some form of programming,' and thus does not involve creating new records"). Accordingly, if the requested data exists in a Department database, the act of searching for it using standard database query functions and providing the results in a format specified by Plaintiff Ferretti would not entail the creation of a new record.

Declarant Ballard frames the request as requiring Department employees to undertake a multistep process of extracting data from the PIERS database one date at a time, feeding that data back into PIERS to obtain PII for each record, comparing this to an unspecified "digitized record" for verification, and finally generating a new document from the verified data that did not previously exist, at a minimum expense of "thousands of manhours". Dkt. 31, ¶20. That is not what Plaintiff is requesting here, and nor, Plaintiff suggests, is it required on a technical level.

As an initial matter, the process described here would only apply to the 331,000 digitized paper records; presumably access to any "born digital" records that originated in the PIERS system should be a straightforward process of exporting the requested data categories – name, date of

birth, date of death, and location of death – for each individual whose date of death is on or before September 5, 2019 and going back to the first day CRDAs were born digital. Defendant should not be permitted to withhold all responsive records because a subset of those records – the digitized paper CRDAs – arguably involve a heightened production burden.

As for the 331,000 digitized paper records, Declarant's description of the process required is based on the limitations it asserts are present in the database user interface (the "frontend") as to searching by date range with a capped limit of responses to a search query, and by its further assertion that the "backend" data tables contain only a reference code disassociated from any meaningful vital data that would appear in a CRDA. Dkt. 32, p. 4. As Plaintiff argues above,[6] the "backend" data should have a greater flexibility so long as a supervising officer assigns an Agency employee an individualized access level consistent with the needs of the Request. That backend data, in Declarant's own words, include name, date of birth, place of birth, date of death, or place of death. Dkt. 32, ¶14. These PII then correlate to an individual reference number for a given record. *Id.*, ¶20. While the elaborate process Defendant describes certainly paints a burdensome picture, it also appears to be one entirely of the Defendant's own invention. A more straightforward process of querying, sorting and exporting data, as assigned by a supervising officer in an individualized manner consistent with the needs of the Request, is well within the type of search contemplated by the E-FOIA Amendments and would not require the creation of new documents.

Defendant puts much emphasis on *Nat'l Sec. Counselors'* distinction between providing particular data points extracted from an agency database, which FOIA requires, and "either creating a record or conducting research" from an agency database, which "would not necessarily have existed prior to a given FOIA request". *Nat'l Sec. Counselors v. Cent. Intelligence Agency*,

---

[6] See discussion at subsection iv, p. 13.

898 F.Supp.2d 233, 271 (D.D.C. 2012). The example in that case describing when a "listing or index of records" would constitute an impermissible new record (elided from Defendant's brief) was "a request seeking 'a database listing of the first 100 FOIA requests filed in Fiscal Year 2012'," which was not the kind of data that agency retained. *Nat'l Sec. Counselors* states the rule plainly:

> "a FOIA request for a listing or index of a database's contents *that does not seek the contents of the database* … is a request that requires the creation of a new record, insofar as the agency has not previously created and retain such a listing or index."

*Id.* (emphasis added.) Plaintiff's instant Request for "a database extract of the name of the decedent, along with the date and location of death", Rankin Ex. 1, is a request for "the contents of the database" that does not require the creation of a new record, and must be produced.

Plaintiffs' request does not require the Department to "reprogram a database" as in *Hawkinson v. Executive Office for Immigration Review,* No. 21-11817-MPK, 2023 WL 515768 (D. Mass. Aug 10, 2023), cited by Defendant. In that case, the plaintiff sought copies of Board of Immigration Appeals decisions stored as image-only files that contained the text phrases "alternatives to detention" or "alternatives-to-detention." The process of converting the 3.4 million image files involved to searchable text files – i.e., *indexing* the text – would have entailed installing new text-recognition software on a dedicated drive, and using it to create new documents for each of those files that did not previously exist, which that court correctly found was not a requirement of FOIA. Here, the data already exists and only requires an agency employee assigned the proper permissions to search in a way calculated to find and copy those data records.

Nor does the Request approach the overbreadth and lack of specificity of the subject FOIA request in *Landmark Legal Foundation v. Department of Justice*, 211 F. Supp. 3d 311 (D.D.C. 2016), which would have required surveying agency employees as to their use of private-sector,

non-governmental email and electronic messaging tools, and other extensive investigative work far outside the agency and the reach of FOIA. The instant Request, to the contrary, is limited to data and records well within the scope of the Department's work.

Nor does this request ask the Department to look for documents outside the Department's control, as in *People for the Am. Way Found. v. U.S. Dep't of Justice*, 451 F. Supp. 2d 6 (D.D.C. 2006). There, the Court discusses defendant DOJ's counterfactual argument that while it enjoyed access to the PACER database, PACER was not the DOJ's own database, and requiring the DOJ to produce a list of PACER search results would constitute production of non-agency records. *Id*. at 14-15. Here, Plaintiff's Request for an export of existing DOS data in a searchable database format is, to the contrary, well within the contours of what FOIA and the E-FOIA amendments require, and should not be withheld from production.

## V. Conclusion

Defendant's motion for summary judgment should be denied. Defendant has failed to meet its threshold burden of resolving any ambiguities or factual uncertainties. Questions persist about how the Department locates relevant records without an index, as well as what information in the Department's digital database correlates to the substance of the Request. Questions about the technical capacity of the PIERS database to export records responsive to the Request are unresolved, and a Department-authored Privacy Impact Assessment appears to contradict Defendant's assertions about the limitations of that database. Defendant has not demonstrated that any search was conducted in response to the Request, and certainly not one calculated to locate responsive records. For these reasons, Defendant's motion should be denied and Plaintiffs' cross-motion granted.

Dated:          March 5, 2024
                New York, New York

                                    Respectfully submitted,

                                    BELDOCK LEVINE & HOFFMAN, LLP
                                    99 Park Avenue, PH/26th Floor
                                    New York, New York 10016
                                    *Attorneys for Plaintiff*

                                    By: _____
                                    Benjamin Meyers, Of Counsel
                                    t: 646-496-2353
                                    e: ben.meyers.esq@proton.me

                                    David B. Rankin
                                    t: 212-277-5825
                                    e: drankin@blhny.com