UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RECLAIM THE RECORDS and ALEC FERRETTI,

Plaintiffs,

-v-

UNITED STATES DEPARTMENT OF STATE,

Defendant.

23 Civ. 1529 (VEC)

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS'
CROSS-MOTION FOR SUMMARY JUDGMENT**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2785
Email: joseph.pantoja@usdoj.gov

JOSEPH A. PANTOJA
Assistant United States Attorney, *Of Counsel*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................. **ERROR! BOOKMARK NOT DEFINED.**

ARGUMENT ........................................................................................................3

I. PLAINTIFFS' ARGUMENTS FAIL TO UNDERMINE THE ADEQUACY OF THE DEPARTMENT'S SEARCH FOR RECORDS ...........................................................3

    A.    The Department's Search Was Reasonable and Adequate ....................................3

    B.    Plaintiffs' Speculation Concerning the Existence of Other Records Should Be Rejected ............................................................................................................7

II. THE DEPARTMENT CANNOT RESPOND TO THE FOIA REQUEST WITHOUT CREATING NEW, CUSTOMIZED AGENCY RECORDS, WHICH FOIA DOES NOT REQUIRE .........................................................................10

CONCLUSION......................................................................................................21

# TABLE OF AUTHORITIES

PAGE(S)

Cases

*Am. Civil Liberties Union Immigrants' Rights Project v. United States Immigration & Customs Enforcement*,
58 F.4th 643 (2d Cir. 2023) ............................................................................... 17, 18

*Carney v. DOJ*,
19 F.3d 807 (2d Cir. 1994) ........................................................................................ 3

*Davis v. U.S. Dep't of Homeland Sec.*,
No. 11cv203, 2013 WL 3288418 (E.D.N.Y. June 27, 2013) ................................... 12

*Flores v. United States Department of Justice*,
391 F. Supp. 3d. 353 (S.D.N.Y. 2019) ................................................................... 12

*Forsham v. Harris*,
445 U.S. 169 (1980) ................................................................................................ 18

*Grand Cent. P'ship, Inc. v. Cuomo*,
166 F.3d 473 (2d Cir. 1999) ..................................................................................... 8

*Hall v. Central Intelligence Agency*,
538 F. Supp. 2d 64 (D.D.C. 2008) ...................................................................... 9, 10

*Hawkinson v. Executive Office for Immigration Review*,
No. 21-11817-MPK, 2023 WL 5153768 (D. Mass. Aug. 10, 2023) ................. 20, 21

*In't Veld v. Dep't of Homeland Sec.*,
589 F. Supp. 2d 16 (D.D.C. 2008) .................................................................... 10, 11

*Judicial Watch v. Dep't of Commerce*,
337 F. Supp. 2d 146 (D.D.C. 2004) ........................................................................ 10

*Landmark Legal Foundation v. Department of Justice*,
211 F. Supp. 3d 311 (D.D.C. 2016) ................................................................... 20, 21

*Long v. ICE*,
149 F. Supp. 3d 39 (D.D.C. 2015) ...................................................................... 9, 11

*Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*,
421 U.S. 132 (1975) ................................................................................................ 11

*Nat'l Sec. Counselors v. Cent. Intelligence Agency*,
898 F. Supp. 2d 233 (D.D.C. 2012) ........................................................... 17, 19, 20

*People for the Am. Way Found. v. U.S. Dep't of Justice*,
451 F. Supp. 2d 6 (D.D.C. 2006) ...................................................................... 20, 21

*Physicians for Human Rights v. DOD*,
675 F. Supp. 2d 149 (D.D.C. 2009) ......................................................................... 8

*Reyes v. United States Environmental Protection Agency*,
991 F. Supp. 2d 20 (D.D.C. June 13, 2014) ............................................................. 8

*Whitaker v. Dep't of Commerce*,
970 F.3d 200 (2d Cir. 2020) ....................................................................... 3, 7, 8, 10

ii

Statutes

5 U.S.C. § 552(a)(4)(B) ........................................................................................................... 9
Pub. L. No. 104–231 ............................................................................................................. 16

Rules

Fed. R. Civ. P. 56 ................................................................................................................... 21

## PRELIMINARY STATEMENT

Defendant United States Department of State (the "Department"), by its attorney, Damian Williams, United States Attorney for the Southern District of New York, respectfully submits this reply memorandum of law in further support of its motion for summary judgment, and in opposition to plaintiffs Reclaim the Records's and Alec Ferretti's (collectively, "Plaintiffs'") cross-motion for summary judgment and Plaintiffs' accompanying Amended Memorandum of Law ("Pl. Mem.").

Plaintiffs' FOIA request asked the Department to produce "a copy of the Index or finding aid to the Reports of Death of a U.S. Citizen Abroad from 1975-present." ECF No. 31-1.[1] The Department submitted the declaration of Regina L. Ballard ("Ballard Decl."), the Department's Division Chief for Office of Records Management, Records Review and Release Division within Passport Services, Bureau of Consular Affairs, explaining that the Department has never maintained such an index and no responsive records were found. ECF No. 31. Accompanying this memorandum of law is Ms. Ballard's reply declaration dated June 26, 2024 ("Ballard Reply Decl."), as well as the June 26, 2024 declaration of Sharon Westmark ("Westmark Reply Decl."), the Department's Division Chief of the Production Services Design and Development Division ("PSDD") within Consular Systems and Technology, Bureau of Consular Affairs, explaining how the Department maintains electronic Consular Reports of Deaths Abroad ("CRDA") in its Passport Information Electronic Records System ("PIERS") and why PIERS contains no responsive records. Nevertheless, Plaintiffs contend that the Department has not adequately explained its search process or otherwise performed an adequate search, Pl. Mem. at 9-16. Contrary to Plaintiffs' contention, and despite the Department never having maintained an

---

[1] The version of the FOIA request received by the Department is plaintiff Alec Ferretti's online submission to the Department dated September 5, 2019. Ballard Decl. ¶ 4 and Ex. 1.

index or finding aid of the type sought by the FOIA request here, the Department conducted a search of its files that was reasonably calculated to uncover responsive records and found none, and provided more than enough detail concerning its search processes in its declarations. Plaintiffs' speculation that more documents could perhaps have been found is ungrounded in any factual basis and does not undermine the adequacy of the search or the presumption of good faith accorded to agency declarations.  The Department is therefore entitled to summary judgment on the adequacy of its search.

Relying on the declaration of Ron Schnell ("Schnell Decl."), Plaintffs also argue that the Department could make certain database queries of the information already in PIERS to generate an index or list of the kind sought in their FOIA request. Pl. Mem. at 16-20. However, consideration of that declaration is inappropriate here for several reasons, including that the adequacy of a federal agency's search for documents in response to a FOIA request is not a topic on which the Court needs the assistance of an expert, and Plaintiffs' attempt to discredit the Department's FOIA search with its own declaration is insufficient to overcome the personal knowledge-based declarations submitted by the Department. In any event, FOIA does not compel the Department to create a new record. Even if it were possible to do so without unreasonable effort, which it is not, using database queries to create a new, custom record akin to an index or finding aid for the Department's CRDAs—*i.e.*, a new record that is not otherwise maintained by the Department—is not required by FOIA.

## ARGUMENT

**I.    PLAINTIFFS' ARGUMENTS FAIL TO UNDERMINE THE ADEQUACY OF THE DEPARTMENT'S SEARCH FOR RECORDS**

### A.    The Department's Search Was Reasonable and Adequate

A court may award summary judgment if the affidavits provided by the agency are "adequate on their face." *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994). The adequacy of an agency's search is "measured by the reasonableness of the effort in light of the specific request." *Whitaker v. Dep't of Commerce*, 970 F.3d 200, 206 (2d Cir. 2020). "We see no reason to depart from the sensible and persuasive approach employed by the courts that have considered this question, and we therefore conclude that an agency need not conduct a search that it has reasonably determined would be futile." *Id*. at 207. Although the Department does not maintain an index or finding aid for CRDAs, the Department nonetheless conducted a search for any index or finding aid for CRDAs and found none. *See* Ballard Decl. ¶¶ 6, 13-16, 19; *id*. ¶ 21 ("I have considered how the Department maintains CRDAs, consulted Department employees with relevant knowledge and expertise, and confirmed that the Department does not have an index of, or 'finding aid' for, CRDAs from 1975 to the present."); Ballard Reply Decl. ¶¶ 7-15, 17, 20; Westmark Reply Decl. ¶¶ 8-11, 14. As explained below, the Department performed an adequate search, consistent with FOIA.

Plaintiffs' mistaken belief in the existence of an "agency-created basic index or internal 'finding aid' to these records," Pl. Mem. at 1, apparently stems from the word "index" used in a System of Records Notice ("SORN"). *See* Pl. Mem. at 5; Declaration of David B. Rankin ("Rankin Decl."), ECF No. 37, Exh. 5 at 3; Ballard Decl. ¶ 11 & Exh. 3. Plaintiffs also speculate that an index or search aid for CRDAs must already exist because "it defies credulity to assert that a single record out of 331,000 can be located without the use of a finding aid or index." Pl.

Mem. at 9. Plaintiffs' incredulity aside, Ms. Ballard confirmed that Department employees *can and do* search for CRDAs without using an "agency-created" index or finding aid. Ballard Reply Decl. ¶ 11.

The Department maintains CRDAs in both electronic and paper form. Ballard Decl. ¶¶ 8-10, 14-16; Ballard Reply Decl. ¶ 16.  The paper CRDAs are stored at the Washington National Records Center (the "Records Center") of the U.S. National Archives and Records Administration ("NARA") in Suitland, Maryland. Ballard Decl. ¶ 9. The boxes are generally organized by the date they are digitized and the unique identifier or batch number assigned to the group of archival materials they belong to that have been transferred to NARA, while the records within the boxes are organized in alphabetical order by last name for each year. *Id*.; Ballard Reply Decl. ¶ 16.

As for the CRDAs mainained in electronic form, while "PIERS does not offer the capability to search by date range" for a CRDA, Ballard Reply Decl. ¶ 20, a PIERS system user searches for any CRDA by inputting a recordholder's personal identifiable information ("PII"), such as name, date of birth, Social Security Number, place of birth, date of death, or place of death, "to retrieve information up to a certain number of results beyond which no further results are shown even if they fit the criterion used," Ballard Decl. ¶ 14; Ballard Reply Decl. ¶ 17 & n.2; Westmark Reply Decl. ¶ 7. "If the PII provided is associated with any person who has electronic records, the Department employee would be able to see the entry in PIERS and any data that has been entered for that person." Ballard Reply Decl. ¶ 18. "However, that entered data remains unverified; prior to relying on or using that data, the employee must verify it against any actual corresponding record in PIERS and correct any errors." *Id.*; Ballard Decl. ¶ 14 ("That Department employee must then undertake a lengthy process to ensure that the information in

PIERS matches the information in the actual electronic record(s) for the individual in question. PIERS does not offer system users the capability to generate a list of CRDAs from a specific date to another specific date."). "If the PII provided is associated with any person who only has paper records or whose electronic records are deficient (*e.g.*, illegible), the Department employee would need to coordinate with the Records Center to manually search boxes stored there to locate the relevant paper records using any available information in PIERS." Ballard Reply Decl. ¶ 19. Thus, "while the Department is able to retrieve some copy—whether electronic or paper—of CRDAs from 1975 to the present, they exist in the form of either individual paper records, each of which must be manually searched in boxes that are not organized by PII, or as individual electronic records, each of which can only be retrieved from PIERS using PII." Ballard Decl. ¶ 16.

As Ms. Ballard also explained, "the term 'electronic index' in the referenced SORN refers to the entirety of the collection of CRDAs as maintained in digital form in PIERS, and not to an index or list of CRDAs that is available to a system user." Ballard Decl. ¶ 15. And as for Plaintiffs' reliance on the Privacy Impact Statement ("PIA") (Pl. Mem. at 5, ECF No. 37-6), Ms. Ballard explained why the Department's ability to share PIERS data externally within the Executive Branch does not signify or require the existence of an index or list in PIERS for CRDAs. Ballard Decl. ¶ 27; *id.* ¶ 28 ("This indirect sharing of data allows DHS to obtain the same data that is in PIERS through an indirect application that does not include any sort of index or table of the data included in the extraction.").

Ms. Ballard also confirmed that no index or finding aid for CRDAs is maintained by the Department. Ballard Decl. ¶¶ 6, 10, 13-15, 19, 21; Ballard Reply Decl. ¶¶ 7-17, 27-30. She explained that she is familiar "with how the Department maintains CRDAs and would have

known of the existence of any index or finding aid that was created for them." Ballard Reply
Decl. ¶ 9. According to Ms. Ballard, while a "system user" could "input an individual's personal
identifiable information []—such as a name, date of birth, Social Security Number, place of
birth, date of death, or place of death—to retrieve information from PIERS," Ballard Decl. ¶ 14,
"the Department maintains neither an 'index' in PIERS that Department employees with
appropriate access can pull, print, or otherwise generate that is responsive to the FOIA request,
nor any 'finding aid' for CRDAs." *Id.* ¶ 19; *see also* Ballard Reply Decl. ¶¶ 7, 10-13, 17. Ms.
Ballard also confirmed that "that functionality has never been available to the Department
through PIERS." Ballard Decl. ¶ 14. In sum, there is no index or finding aid—in paper or
electronic form—for CRDAs.

Beyond her own familiarity with PIERS, Ms. Ballard conducted a search for any such
index or list by inquiring with knowledgeable personnel in the Department's Office of Consular
Systems and Technology to determine whether an existing index or finding aid for CRDAs might
exist in PIERS, and they "confirmed that no such index or 'finding aid' resides in PIERS."
Ballard Reply Decl. ¶ 13. They also "confirmed that no feature in PIERS allows a user to pull an
index or finding aid for CRDAs stored in PIERS, and PIERS has never provided such
functionality to system users." *Id.* She also spoke with other Department personnel with subject
matter expertise, including Passport Services, which is part of the Office of Modernization and
Systems Liaison, "to determine whether an otherwise unknown index or finding aid for CRDAs
may exist." *Id.* ¶ 12. These Department personnel "confirmed that the Department does not
maintain, and has never maintained, any index or finding aid for CRDAs beyond that which
might have existed in the defunct [Passport File Miniaturization] database." *Id.* Ms. Ballard
further confirmed that, aside from PIERS, "there is no other electronic recordkeeping system on

which a search for the requested index or finding aid might reasonably result in discovery of the requested index or 'finding aid,' or on which it would have been practical to run a search query for 'CRDA index' or 'CRDA list," for example." Ballard Reply Decl. ¶ 10.

Likewise, Ms. Westmark confirmed, based on her personal knowledge, including her technical familiarity with the Department's electronic CRDAs and PIERS, that system users can and do retrieve images of CRDAs by entering a recordholder's PII in PIERS without resort to an index or finding aid of such records. Westmark Reply Decl. ¶¶ 7, 10. She also confirmed that PIERS does not contain an index or finding aid for CRDAs, "and there is no feature in PIERS that allows a user to pull or generate an index or 'finding aid' of CRDAs PIERS can retrieve." *Id*. ¶ 8. Consequently, "the Department ultimately relies on the information in the actual electronic or paper CRDA," *id*. ¶ 14, and "an inventory of the Department's CRDAs would ultimately need to be manually derived from either the paper or electronic CRDAs, as described in Ms. Ballard's declaration," *id.* ¶ 15 (citing Ballard Decl. ¶ 18–19); Ballard Reply Decl. ¶¶ 16-17. Having confirmed that PIERS does not contain an index or finding aid for CRDAs and that there is no other location that might reasonably result in discovery of the requested records, particularly because the Department does not maintain such records, the Department satisfied its obligation to perform an adequate search here. *Whitaker*, 970 F.3d at 207.

### B.   Plaintiffs' Speculation Concerning the Existence of Responsive Records Should Be Rejected

Ultimately, Plaintiffs' speculation that the requested index exists is not sufficient to overcome the Department's declarations, which are entitled to a presumption of good faith and which reasonably explained the search that was performed and that, in any event, any further search would be futile because the Department does not maintain—and has never maintained through PIERS or in physical form—the records sought. *See* Defendant's Memorandum of Law

in Support of Its Motion for Summary Judgment ("Def. Mem."), ECF No. 32, at 7-9 (listing

cases); *cf. Whitaker*, 970 F.3d at 207 ("'It is clear beyond cavil that an agency cannot improperly

withhold records that it does not maintain, and that 'where the Government's declarations

establish that a search would be futile, the reasonable search required by FOIA may be no search

at all.'" (alterations omitted) (*quoting Reyes v. United States Environmental Protection Agency*,

991 F. Supp. 2d 20, 27 (D.D.C. June 13, 2014))); *see Grand Cent. P'ship, Inc. v. Cuomo*, 166

F.3d 473, 489 (2d Cir. 1999) (Agency affidavits are "accorded a presumption of good faith,"

which "cannot be rebutted by purely speculative claims about the existence and discoverability

of other documents.") (internal quotation marks and citations omitted); *id.* at 478 (Those

affidavits need only "contain *reasonable specificity* of detail rather than merely conclusory

statements." (emphasis in original)). "[I]n responding to a FOIA request, an agency is only held

to a standard of reasonableness; as long as this standard is met, a court need not quibble over

every perceived inadequacy in an agency's response, however slight." *Physicians for Human*

*Rights v. DOD*, 675 F. Supp. 2d 149, 164 (D.D.C. 2009).

Plaintiffs' challenge to the overall breadth of the Department's search on the ground that

they suspect a digital or electronic version of the sought-after index or finding aid exists in

PIERS, which allegedly had not been adequately searched, is also unavailing. Pl. Mem. at 15-20.

As a preliminary matter, Plaintiffs' contention that the Department has not clarified "how many

additional CRDAs originated in digital form, as distinct from originating in paper form and being

digitized later" is a red herring. Pl. Mem. at 15. Ms. Ballard explained that "[a]ll Department

CRDAs that exist in electronic form—whether as a result of having been originally received by

the Department in electronic form or having been digitized from an originally paper source—

can be retrieved from PIERS." Ballard Reply Decl. ¶ 17. And that database was searched and

yielded no responsive records. Ballard Decl. ¶¶ 13-15, 19; Ballard Reply Decl. ¶¶ 7, 10-13, 17;

Westmark Reply Decl. ¶ 8.

Plaintiffs' reliance on the declaration of Mr. Schnell, Plaintiffs' proffered "database

expert," is also misplaced. ECF No. 41. Although Mr. Schnell's Declaration raises some

questions about PIERS' capabilities based on his experience with other, "typical" databases,

those questions are insufficient to create a genuine dispute of material fact that would preclude a

grant of summary judgment in the Department's favor. FOIA requires courts to "accord

substantial weight to an affidavit of an agency concerning the agency's determination as to

technical feasibility . . . and reproducibility[.]" 5 U.S.C. § 552(a)(4)(B). Accordingly, where, as

here, the agency has provided more than reasonably detailed declarations addressing the issue,

the adequacy of a federal agency's search for documents in response to a FOIA request is not a

topic on which this Court needs the assistance of an expert. *See Hall v. Central Intelligence

Agency*, 538 F. Supp. 2d 64, 72–73 (D.D.C. 2008) ("[T]he Federal Rules of Evidence and

Federal Rules of Civil Procedure do not permit testimony to be introduced carte blanche merely

because they are [sic] offered by an expert.").

Further, Mr. Schnell is not a Department employee, and he does not aver that he has ever

worked at the Department. *See* Schnell Decl. ¶¶ 2-8. Nor does he attest to any personal

knowledge of or familiarity with the record systems maintained by the Department; rather, he

assumes—mistakenly, as discussed *infra*—that the Department's database is a "typical" one. *See

generally* Schnell Decl. Mr. Schnell therefore lacks a foundational knowledge of the events

underlying the Department's search of its uniquely-configured PIERS database, and his

testimony has no probative value as to the adequacy of the agency's search. *See Long v. ICE*, 149

F. Supp. 3d 39, 57-58 (D.D.C. 2015) (noting that plaintiff's expert, "limited by his lack of first-

hand experience," could not rebut the agency's declaration); *In't Veld v. Dep't of Homeland Sec.*, 589 F. Supp. 2d 16, 17-21 (D.D.C. 2008) ("DHS released 28 pages of records to her, but she contests the adequacy of the search in reliance on an affidavit of a travel expert. Because the expert's affidavit is based on the erroneous assumption that DHS's data systems are the same as the airlines' data systems and because DHS submitted detailed affidavits describing an adequate search, summary judgment will be granted in favor of DHS."); *Hall*, 538 F. Supp. 2d at 72 ("More fundamentally, the Declaration is at most an opinion that defendant did not conduct an adequate search. [Declarant] cannot speak to the truth of the events he alleges to have occurred, to which he has no personal knowledge."); *see also Judicial Watch v. Dep't of Commerce*, 337 F. Supp. 2d 146, 161 (D.D.C. 2004) (finding that plaintiff's attempt to discredit FOIA search with its own declaration was "insufficient to overcome the personal knowledge-based" declarations submitted by the agency).

For the foregoing reasons and as also explained in the Department's moving brief, Plaintiffs' unsubstantiated speculation that an index of finding aid for CRDAs was necessary for the Department to search such records and that consequently a more thorough search might have located a responsive record is insufficient to overcome the Department's affidavits, "which adequately explain why defendant would not have records responsive to th[e] request[]." *Whitaker*, 970 F.3d at 208.

## II.  THE DEPARTMENT CANNOT RESPOND TO THE FOIA REQUEST WITHOUT CREATING NEW, CUSTOMIZED AGENCY RECORDS, WHICH FOIA DOES NOT REQUIRE

Despite their actual FOIA request seeking a copy of what Plaintiffs apparently believed was an existing, "agency-created" index or finding aid for CRDAs, ECF No. 42 at 1; ECF No. 31-1, Plaintiffs now argue that the Department is obligated to generate an index or finding aid for

CRDAs via database queries in PIERS. Pl. Mem. at 14 (arguing that Plaintiffs seek a list that "an IT specialist could manipulate PIERS to extract"); *id.* at 14-20. Plaintiffs claim they seek "a document extracting key terms from a series of individual records and organizing those key terms in some logical, relational sequence or table by which each record could be located." *See* ECF No. 42 at 11. In making this argument, Plaintiffs again rely on the declaration or Mr. Schnell, who states that he has experience in database programming. Pl. Mem. at 13-15; ECF No. 41. As a preliminary matter, the Department cannot be compelled to create a new document or record, or new functionalities in PIERS, in response to the FOIA Request. *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 161–62 (1975); *see* Def. Mem. at 9-14 (discussing cases). Moreover, the relevant portion of Mr. Schell's declaration—addressing what Mr. Schnell believes the Department could do to create a list of the CRDAs from whatever records are accessible from PIERS—is inadequate to rebut the Department's declarations regarding the information that is available through PIERS, due to Mr. Schnell's lack of first-hand experience with the Department's databases. *See, e.g.*, *Long*, 149 F. Supp. 3d at 57-58; *In't Veld*, 589 F. Supp. 2d at 17-21.

Plaintiffs' attack on Ms. Ballard's declaration—arguing that it was informed by inquiries with Department personnel with subject matter experience and otherwise "not based on her own first-hand knowledge of Department systems"—is unavailing. Pl. Mem. at 13-14. Ms. Ballard, who is the Department's Division Chief for Office of Records Management ("ORM"), Records Review and Release Division within Passport Services, Bureau of Consular Affairs, stated that her declaration is "based upon my personal knowledge, as well as upon information acquired by me in the course of my official duties," and that ORM's duties include, *inter alia*, "reviewing and determining the release of passport records and information," "*general management of*

*passport records*," and "*the archiving and retrieval of those records.*" Ballard Reply Decl. ¶¶ 1-3 (emphasis added); Ballard Decl. ¶¶ 1-3 (same). Ms. Ballard described, with reasonable specificity, how the Department maintained CRDAs and consequently why a search for responsive records was unlikely to be fruitful, and further how she was able to confirm that no responsive records exist in either paper or electronic form at NARA, in PIERS, or otherwise. *See generally* Ballard Decl.; *see, e.g., Flores v. United States Department of Justice*, 391 F. Supp. 3d. 353, 362 (S.D.N.Y. 2019) ("Although the declarants were not personally involved in every part of the defendant's search, the declarations sufficiently establish the declarants' personal knowledge of the relevant FOIA procedures and the search."); *Davis v. U.S. Dep't of Homeland Sec.*, No. 11cv203, 2013 WL 3288418, at *8 (E.D.N.Y. June 27, 2013) (holding that a supervisory position, combined with a thorough description of the search and familiarity with relevant procedures, constitutes sufficient personal knowledge). In any event, as noted, the Department has also submitted the declaration of Ms. Westmark, who, based on her personal knowledge and relevant technical experience, addresses how the Department accesses electronic CRDAs via PIERS. As explained below, she, too, confirmed that an index or finding aid for CRDAs does not exist in PIERS. Westmark Reply Decl. ¶¶ 8, 14.

As a result of Mr. Schnell's reliance on how "typical" databases work, he mischaracterizes the capabilities of the PIERS database. The Department has provided straightforward, factual information about what actually exists and does not exist at the Department—in PIERS or otherwise—with regard to CRDAs. Ms. Westmark elaborated on the technical aspects of the PIERS database as they relate to the FOIA request. Like Ms. Ballard, Ms. Westmark confirmed the absence of responsive records in PIERS and that "[t]here is no feature in PIERS that allows a system user to pull or generate an index or 'finding aid' of

CRDAs PIERS can retrieve." Westmark Reply Decl. ¶ 8; Ballard Decl. ¶¶ 13-15, 19; Ballard Reply Decl. ¶¶ 7, 10-13, 17. Relying on Mr. Schnell's description of examples of queries that could be used to extract information from what he described as typical databases, Plaintiffs contend that Department employees with sufficient user privileges for PIERS should be able to generate a responsive document, even if the Department's "daily system users" have insufficient access to do so. Pl. Mem. at 14-15 (citing Schnell Decl. ¶¶ 17-28). Mr. Schnell opined that even if the Department does not use any existing electronic index to retrieve CRDAs in PIERS and even if "PIERS as configured for the specific needs of Department staff is limited to entering individual information, the fact . . . that PIERS can use [PII] shows that, without question, the database maintains these fields, and that these fields can be used in a simple query such as the examples above." Schnell Decl. ¶ 27.

But the Department has explained through its declarants why Mr. Schnell is incorrect. The Ballard declarations and Westmark declaration, which are entitled to a presumption of good faith, explain that the Department would have to take exhaustive steps to *create* the index or finding aid requested by Plaintiffs. Unlike Mr. Schnell, Ms. Ballard and Ms. Westmark are familiar with the PIERS database itself. As explained below, "the only way to generate something that the Department could use as an index or finding aid for available CRDAs is to extract data retrievable in PIERS itself in addition to any additional data from paper records stored at the Records Center, and then subject the results to extensive data verification." Ballard Reply Decl. ¶ 25.

Even assuming Mr. Schnell had correctly explained how queries can be created to extract data in a typical database "so long as the data is stored in database columns and fields," he "incorrectly assumes that this is how data is retrieved by PIERS." Westmark Reply Decl. ¶ 9.

Ms. Westmark explained that, unlike in a typical database, "[t]he data that PIERS retrieves and outputs is stored as 'images' because the Department scanned and imported the actual physical copies of CRDAs," and "[e]ach saved image of a CRDA has a unique image identification number, which PIERS uses to retrieve the appropriate image to display to the user." *Id*. ¶ 10. As explained by Ms. Westmark,

> A record is associated with a unique data ID called a "PRISM file number" in the backend, which is how the respective image is referenced and returned in PIERS. More specifically, PIERS is the front end to a series of databases, with the following data distributed across them, including: a person's name, Social Security Number, date of birth, place of birth, address, e-mail address, phone number, and PRISM file number.  When a system user searches by name in PIERS, for instance, PIERS searches for all relevant PRISM file numbers based upon the search criteria entered, and uses the PRISM file numbers to find the relevant file shares/databases to retrieve the image of the CRDA.
>
> There is a unique PRISM number for each scanned document, so there could be multiple PRISM numbers associated with a recordholder, who could have a CRDA in addition to any number of passport records.  Due to data available to PIERS, the Department is unable to verify the accuracy of all the PRISM file numbers associated with the CRDAs.  A Passport Specialist would need to verify any data from PRISM file numbers. Consequently, as explained by Ms. Ballard, the Department does not rely on PIERS as a database of verified passport records, and especially of CRDAs.  Ballard Decl. ¶ 18. Instead, as also noted by Ms. Ballard, the Department ultimately relies on the information in the actual electronic or paper CRDA, and there is no accompanying index or "finding aid"—in paper or electronic form—of those records. Ballard Decl. ¶¶ 18–19..

Westmark Reply Decl. ¶¶ 13-14.   "Because of this limitation, the only way for the Department to compile and create an index of CRDAs in PIERS—which, for avoidance of doubt, does not currently exist—would be for a Department employee to attempt to identify an accurate means of referencing and joining data stored across multiple repositories, which would require manual searches and verification of the information in every record, which Ms. Ballard's declaration describes." *Id*. ¶ 11.

Specifically, "attempting to [generate an index of over 331,000 CRDAs] without each individual's PII" would require "[a] member or members of the Department's support team . . .

to conduct a search for every individual date from 1975 to the present (*i.e.*, January 1, 1975, January 2, 1975, and so on)." Ballard Decl. ¶ 20; Ballard Reply Decl. at 8 n.2 (even then, "a frontend user would not likely be able to retrieve the full set of CRDA data, even searching date-by-date, since it is expected that the actual number of CRDA results would exceed 250 on some days within the requested date range."). "The Department's support team would need to provide the entire collection of resulting reference numbers to one or more PIERS system users, who would then need to match those reference numbers, one by one, to an entry in PIERS, and then match those PIERS results with any corresponding electronic record(s)." Ballard Decl.  ¶ 20. However, "[s]hould an electronic record not exist for the generated reference number or if the electronic record is deficient (*e.g.*, illegible), a Department employee would need to coordinate with the Records Center to manually search every box using the digitized date, unique identifier or batch number, and/or any other available information generated by PIERS to locate the corresponding paper record." *Id*. "Finally, a Department employee would need to input all the data collected from either the electronic or paper records to generate an index." *Id*.

Ms. Ballard and Ms. Westmark also explained why creation of the requested index or finding aid would be unduly burdensome. "[G]enerating an index or finding aid for over 331,000 CRDAs would be a monumental undertaking requiring a minimum of thousands of manhours, which would necessarily pull relevant Department employees away from their regular duties— including responding to FOIA requests submitted by persons seeking their own passport records—at a time when they are already short-staffed and thinly stretched." Ballard Reply Decl. ¶ 26 (citing Ballard Decl. ¶ 20). "In addition to the hours that Passport officers would need to spend verifying the information, given the number of CRDAs that exist, this process would require at least a handful of technical subject matter experts and potentially hundreds of hours

devoted to researching, reviewing, and validating the results retrieved." Westmark Reply Decl.
¶ 11. "This level of support is needed when retrieving large data sets as it is known that on
occasion the results returned are not all-encompassing, even for a backend user." *Id*. The PSDD
"would also be required to hire additional personnel to ensure that its regular responsibilities can
continue to be met while responding to this request" to generate an index or finding aid for
CRDAs. *Id*.

Because of PIERS' limited functionality, creation of an index or finding aid for CRDAs
would require reference to the paper records. "In order to search for a CRDA record in PIERS
currently, the system user must enter a person's PII," and "[t]he PIERS application references
databases when a front-end user enters this information to retrieve the relevant CRDA data and
images." Westmark Reply Decl. ¶ 12. "Because PIERS utilizes a series of databases housing
different aspects of this information, the 'database queries' described in the Schnell declaration,
even if feasible, would generate a high level result set that Department personnel would have to
separately validate and verify in any event." *Id*. ¶ 15. "Consequently, an inventory of the
Department's CRDAs would ultimately need to be manually derived from either the paper or
electronic CRDAs, as described in Ms. Ballard's declaration." *Id*. (citing  Ballard Decl. ¶¶ 18-
19). In short, there is no existing electronic index of CRDAs that is utilized by PIERS before it
retrieves the images andcorresponding to a system user's request for records, and performing
database queries on PIERS is not straightforward as Mr. Schnell suggests, nor could it result in
an index or finding aid for CRDAs for the reasons explained by Ms. Ballard and Ms. Westmark.

Plaintiffs argue that the 1996 Electronic FOIA Amendments ("E-FOIA Amendments"),
Pub. L. No. 104–231, § 5, 110 Stat. 3048, 3050 (1996), compel the extraction of an index from
PIERS in a spreadsheet format because the E-FOIA Amendments require an agency to conduct

electronic database searches, and such searches are not regarded as involving the creation of new records. Pl. Mem. at 16–20 (citing *Am. Civil Liberties Union Immigrants' Rights Project v. United States Immigration & Customs Enforcement*, 58 F.4th 643, 653 (2d Cir. 2023); *Nat'l Sec. Counselors v. Cent. Intelligence Agency*, 898 F. Supp. 2d 233, 270 (D.D.C. 2012)).   But this argument attacks a strawman.   The Department's position is not that an index residing in PIERS and identifying individuals who died from 1975 to the present is immune from production under FOIA because it is stored in an electronic database or can only be retrieved by an electronic search of that database, but rather that the process of responding to Plaintiffs' FOIA Request entails the creation of records that presently do not exist.

Plaintiffs' reliance on *ACLU Immigrants' Rights Project* for the proposition that the need to employ "the application of codes or some form of programming to retrieve the information" would "not amount to the creation of records", 58 F.4th at 653, is misplaced. Pl. Mem. at 16. *ACLU* is distinguishable and otherwise supports the conclusion that requiring the Department to generate an index under the circumstances of this case would amount to record creation that is not required under FOIA. In *ACLU*, the government refused the ACLU's request to replace "A-Numbers"—a unique number assigned to each individual non-citizen immigrating to the United States, which is exempt from disclosure under FOIA—with an anonymized "Unique ID" that would permit the ACLU to track data related to individual (but unidentified) non-citizens across ICE's databases. 58 F.4th at 646. The district court granted summary judgment for ICE on the basis that ACLU's requested substitutions required creation of new records. *Id*. at 646–47. The Second Circuit reversed. *Id*. at 647. Although ICE maintained event-centric (rather than person-centric) databases, it also "chose[ ]—although it was not required—to have FOIA-exempt A-Numbers function as the sole 'key' or 'code' affording access to electronic data pertaining to

17

individual [non-citizens] from its event-centric databases," and "ICE itself use[d] A-Numbers for that purpose." *Id*. at 647. The court noted that ICE acknowledged that it had the "ability to track a single individual across the various stages of immigration proceedings"—in other words, "although ICE stores immigration data by event, it can, and on an *ad hoc* basis does, access that information in a person-centric manner in the regular course of agency business." *Id*. at 655, 658. "[D]istinguish[ing] between the content of an electronic record and the function it may have been assigned within a computer system," the court reasoned that although the A-Numbers themselves were properly redacted, the function they served was not. *Id*. at 656. ACLU's proposed substitution of Unique IDs—"numbers meaningless in themselves but able to perform the same access function as A-Numbers"—neither "alter[ed] the content of any exempt record" nor "document[ed] any new information" nor "otherwise create[d] any new records." *Id*. at 655–56. "Rather, Unique IDs serve[d] only . . . to preserve a function necessary to afford the public the same person-centric access to non-exempt records that ICE already has." *Id*. at 656.

Here, unlike the agency in *ACLU*, the Department produced no responsive records because they in fact do not exist, not because the Department had failed "to preserve a function necessary to afford the public the same person-centric access to non-exempt records that [the agency] already has." 58 F.4th at 656. The Department is *not* denying Plaintiffs access to non-exempt records already maintained in the agency's database and in a form that is as useful as the form in which the non-exempt records are available to the agency in the regular course of business. That is because the requested index or finding aid is not already maintained in the Department's database and otherwise does not currently exist for use by anyone, including the agency, in paper or electronic form, *see* Westmark Reply Decl. ¶ 8; Ballard Decl. ¶¶ 13-15, 19;

Ballard Reply Decl. ¶¶ 7, 10-13, 17, and FOIA does not obligate the Department to create such an index, *see, e.g., Forsham v. Harris*, 445 U.S. 169, 186 (1980).

In the *National Security Counselors* case, cited in both the Department's moving brief and in Plaintiffs' brief, *see* Def. Mem. at 9; Pl. Mem. at 17, the district court considered an analogous FOIA request and held that it amounted to the creation of a new record:

> Producing a listing or index of records . . . is different than producing particular points of data (*i.e.*, the records themselves).  This is because a particular listing or index of the contents of a database would not necessarily have existed prior to a given FOIA request . . . .The same would be true of paper, rather than electronic, records.  For example, if a FOIA request sought 'an inventory of all non-electronic records created in 1962 regarding the Cuban Missile Crisis,' an agency need not create an inventory if one did not already exist, though the agency would need to release any such non-electronic records themselves if they were requested and were not exempt from disclosure.

898 F. Supp. 2d at 271. As discussed in the Department's moving brief, by seeking an index or finding aid for CRDAs from 1975 to the present, Plaintiffs are essentially requesting an inventory of such records. Def. Mem. at 9-10. The Department "need not create an inventory if one did not already exist," and "[t]herefore, a FOIA request for a listing or index of a database's contents that does not seek the contents of the database, but instead essentially seeks information about those contents, is a request that requires the creation of a new record, insofar as the agency has not previously created and retained such a listing or index." *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d at 271; *see also* Def. Mem. at 9-10 (listing cases).

Plaintiffs attempt to distinguish *National Security Counselors* by arguing that it involved "a request seeking 'a database listing of the first 100 FOIA requests filed in Fiscal Year 2012,' which was not the kind of data that agency would be expected to retain." Pl. Mem. at 19. But as Ms. Ballard and Ms. Westmark make clear, the Department does not maintain an index or finding aid for CRDAs, and a search for such a document—be it in paper or electronic form, and

regardless of the time frame of such records, yielded no responsive documents. *National Security Counselors* is thus on point. Consequently, even assuming, as Plaintiffs contend, that their FOIA request seeks material which has already been digitized in a searchable database form, Pl. Mem. at 19, the Department's declarations adequately explain why such a record does not exist.

Plaintiffs' selective quoting of *National Security Counselors* to suggest that they are merely asking the Department to perform a search required by FOIA is unavailing. Pl. Mem. at 17. The pertinent language of that decision is as follows:

> [A]n agency need not create a new database or a reorganize its method of archiving data, but if the agency already stores records in an electronic database, searching that database does not involve the creation of a new record. Likewise, sorting a pre-existing database of information to make information intelligible does not involve the creation of a new record because, as Congress noted in the legislative history to the E-FOIA Amendments, "[c]omputer records found in a database rather than a file cabinet may require the application of codes or some form of programming to retrieve the information." Sorting a database by a particular data field (*e.g.*, date, category, title) is essentially "the application of codes or some form of programming," and thus does not involve creating new records or conducting research—it is just another form of searching that is within the scope of an agency's duties in responding to FOIA requests.

898 F. Supp. 2d at 270. This language does not help Plaintiffs because, admittedly, Plaintiffs are not seeking the underlying records themselves, which might have "require[d] the application of codes or some form of programming to retrieve the information." *Id*.  Plaintiffs are instead asking the Department to conduct a search for the very purpose of generating an index or finding aid that does not currently exist.

Plaintiffs' attempt to distinguish *Hawkinson v. Executive Office for Immigration Review*, No. 21-11817-MPK, 2023 WL 5153768 (D. Mass. Aug. 10, 2023); *Landmark Legal Foundation v. Department of Justice*, 211 F. Supp. 3d 311 (D.D.C. 2016), and *People for the Am. Way Found. v. U.S. Dep't of Justice*, 451 F. Supp. 2d 6, 15 (D.D.C. 2006), is also unavailing. Pl. Mem. at 19-20. The Department cited those cases to demonstrate that Courts have repeatedly

found that agencies are excused from creating files or database indices for FOIA requesters and are otherwise not required to create a record in response to a FOIA request, which is essentially what Plaintiffs are asking for here. *Hawkinson*, 2023 WL 5153768, at *8; *Landmark Legal Foundation*, 211 F. Supp. 3d at 318; *People for the Am. Way Found.*, 451 F. Supp. 2d at 15; Def. Mem. at 11-12.

## CONCLUSION

For the foregoing reasons, defendant Department respectfully requests that the Court grant summary judgment in its favor and deny Plaintiffs' cross-motion for summary judgment, as set out above, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Dated: June 26, 2024
New York, New York

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
*Attorney for Defendant*

By:      */s/ Joseph A. Pantoja*
JOSEPH A. PANTOJA
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.:    (212) 637-2785
Email: joseph.pantoja@usdoj.gov

21