UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
:
RECLAIM THE RECORDS and ALEC FERRETTI,  :
:
                                Plaintiffs,  :    23-CV-1529 (VEC)
:
              -against-  :    OPINION & ORDER
:
UNITED STATES DEPARTMENT OF STATE,  :
:
:
                                Defendant.  :
------------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

       Pursuant to the Freedom of Information Act ("FOIA"), Plaintiff Alec Ferretti requested the Defendant United States Department of State ("State Department" or "DOS") to produce a copy of "the Index or finding aid to the Reports of Death of a U.S. Citizen Abroad" from 1975 to the present. Declaration of Regina L. Ballard. Ex. 1 ("Ferretti Request"), Dkt. 31-1.[1] The State Department asserts that no such document exists. Plaintiffs filed this action to compel the State Department to search for and produce responsive records. Complaint ("Compl."), Dkt. 1, ¶ 2. The parties cross-moved for summary judgment. *See* Defendant's Motion for Summary Judgment, Dkt. 30; Plaintiffs' Cross-Motion for Summary Judgment, Dkt. 36. Defendant's motion for summary judgment is GRANTED, and Plaintiffs' cross-motion for summary judgment is DENIED.

---

[1]     Plaintiffs have also submitted a version of Mr. Ferretti's FOIA request at Dkt. 37-1, which is identical to the one at Dkt. 31-1.

## BACKGROUND[2]

When a U.S. embassy or consulate receives a report that a U.S. citizen has died abroad, it creates a Consular Report of Death of a U.S. Citizen Abroad ("CRDA"). Declaration of Regina L. Ballard ("Ballard Decl."), Dkt. 31, ¶ 8. A typical CRDA lists the decedent's birth date and the circumstances surrounding his or her death. *Id*.

The State Department maintains CRDAs in both paper and digital forms. *Id*. There are at least 331,000 CRDAs that exist in paper form and are stored at the Washington National Records Center of the U.S. National Archives and Records Administration. *Id*. ¶ 9. Most, but not all, of the paper CRDAs have been digitized. *Id*. ¶ 10. To digitize a paper CRDA, a State Department employee scans and imports the record into the Passport Information Electronic Records System ("PIERS"), an electronic database maintained by DOS. *Id*. ¶ 8; Reply Declaration of Sharon Westmark ("Westmark Decl."), Dkt. 47, ¶ 10. When an employee uploads a CRDA to PIERS, he or she may manually input into PIERS any personal identifiable information ("PII") that can be gleaned from the paper CRDA, such as the decedent's name, date of birth, Social Security Number, place of birth, date of death, and place of death. Reply Declaration of Regina L. Ballard ("Ballard Rep. Decl."), Dkt. 46, ¶ 17. Once this process is complete, the paper CRDAs are usually placed into boxes; the boxes are organized by the date on which the records contained therein were digitized and by the unique identifier or batch number assigned to the group of archival materials to which they belong. Ballard Decl. ¶ 9.

Prior to the creation of PIERS in 2000, State Department records were stored in a different database called the Passport File Miniaturization ("PFM"). *Id*. ¶¶ 12–13. When PFM was active, there was an index that could be used to navigate the records it contained, but that

---

[2]   In lieu of Rule 56.1 statements, courts in this District permit parties in FOIA cases to submit "affidavits and declarations" to establish the requisite facts. *Carney v. U.S. Dep't of Just.*, 19 F.3d 807, 812 (2d Cir. 1994).

index — like PFM itself — no longer exists. *Id*. PIERS is different. Rather than relying on an index, users navigate PIERS via a search function, which allows State Department employees to retrieve CRDAs and other passport records by entering PII associated with the person about whom records are sought. *Id*. ¶ 14.

In September 2019, Plaintiff Alec Ferretti filed the following FOIA request with the State Department:

> I am looking to obtain a copy of the Index or finding aid to the Reports of Death of a U.S. Citizen Abroad from 1975-present. . . . If the records are somehow born digital, an index might be a database extract of the name of the decedent, along with the date and location of death, however, i [*sic*] doubt the records are in such a format. If there has been a database created in the modem day of an index to the deaths (such as in a spreadsheet), I would be most interested in obtaining such as file. I am not sure in what format the Reports of Death are, so I cannot specify exactly what type of document I would expect to receive. I would like to know whose Reports of deaths are in possession of the State Department, and when those people died. Whichever documents by whichever name contain that information is the scope of my request.

Ferretti Request.

According to a declaration from Regina Ballard, the Division Chief for the Office of Records Management, Records Review and Release Division within Passport Services, Bureau of Consular Affairs of the State Department, there are no records responsive to Mr. Ferretti's request. Ballard Decl. ¶¶ 1, 5–6, 23. This is because the State Department relies on PIERS's search function, rather than a system-wide index or "finding aid," to identify records. *Id*. ¶¶ 10, 16. For most users, the system returns only a fixed number of results per search, and there is no functionality within PIERS that would allow a user to create a list of all CRDAs from a particular time period. *Id*. ¶ 14.

Following "inquiries with [State] Department personnel with subject matter expertise," Ms. Ballard confirmed that there is no alternative way to devise an index of CRDAs. *Id*. ¶ 17. Although it is possible to conduct a "backend" search of PIERS, the results of which would not

be subject to the numerical cap on returns that affects ordinary "frontend" searches, such a search would yield only reference numbers corresponding to individual CRDAs. *Id.* ¶ 18.[3] To match the reference numbers generated via a "backend" search to any information about individual CRDAs, a State Department employee "would . . . have to search each of those reference numbers individually in PIERS for the corresponding records." Ballard Rep. Decl. ¶ 24.

In addition to the above-described inquiry, "[a]ll files likely to contain relevant records" responsive to Mr. Ferretti's request were searched and nothing was found. Ballard Decl. ¶¶ 13, 23.

Plaintiffs Ferretti and Reclaim the Records, a nonprofit organization of which Mr. Ferretti is a board member, commenced this action in February 2023, seeking an injunction compelling the Department to search for and disclose all responsive records. Compl. ¶¶ 2, 6. In April 2023, the State Department informed Mr. Ferretti via letter that there were no responsive records. Ballard Decl. Ex. 2, Dkt. 31-2. The letter explained that the State Department "does not maintain an index or search aid" for CRDAs and "can only retrieve CRDAs stored in the system manually and one-at-a-time, meaning that the Department must search the system using personally identifiable information, including the name and date of birth of an individual, to locate a particular CRDA." *Id* at 1. The State Department moved for summary judgment in January 2024, and Plaintiffs cross-moved in March 2024. Dkts. 30, 36.

## DISCUSSION

### I.     Legal Standard

Pursuant to FOIA, "each [federal] agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . ., shall

---

[3]    In response to a "frontend" search, the PIERS system will return responsive information "up to a certain number of results beyond which no further results are shown even if they fit the criterion used." Ballard Decl. ¶ 14.

make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Given the rarity of factual disputes in FOIA cases, summary judgment is the most common procedural vehicle by which FOIA cases are resolved. *See Det. Watch Network v. U.S. Immigr. & Customs Enf't*, 215 F. Supp. 3d 256, 261 (S.D.N.Y. 2016) (citing *Carney v. Dep't of Just.*, 19 F.3d 807, 812 (2d Cir. 1994)). Summary judgment is appropriate if a moving party "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"A district court in a FOIA case may grant summary judgment in favor of an agency on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999) (citations omitted). When an agency submits a declaration or affidavit in support of its conclusion that it does not possess responsive records, it is entitled to "a presumption of good faith." *Seife v. Food & Drug Admin.*, 492 F. Supp. 3d 269, 74 (S.D.N.Y. 2020). Summary judgment in favor of the agency is appropriate where "the agency's justification" for not producing records "appears logical and plausible." *Am. C.L. Union v. United States Dep't of Def.*, 901 F.3d 125, 133–34 (2d Cir. 2018), *as amended* (Aug. 22, 2018).

## II. The State Department's Search Was Reasonable

### A. The State Department Has Shown That Its Search Was Adequate

"In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate." *Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 190 (2d Cir. 2012) (quoting *Carney*, 19 F.3d at 812). When, as here, the agency claims that it cannot locate records responsive to a FOIA request, it bears the burden of showing that it "has conducted a reasonable search for relevant documents." *Garcia v. U.S. Dep't of*

*Just., Office of Info. & Priv.*, 181 F. Supp. 2d 356, 366 (S.D.N.Y. 2002).  When it is clear that an agency does not maintain the requested records and "the Government's declarations establish that a search would be futile, the reasonable search required by FOIA may be no search at all." *Whitaker v. Dep't of Com.*, 970 F.3d 200, 207 (2d Cir. 2020).  When a search is not futile but is fruitless, an agency may satisfy its burden through "[a]ffidavits or declarations supplying facts indicating that the agency has conducted a thorough search."  *Carney*, 19 F.3d at 812.  The key question is whether the agency's "search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant."  *Grand Cent. P'ship Inc.*, 166 F.3d at 489 (quoting *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1201 (D.C. Cir. 1991)).

The State Department's position that its search was adequate is substantially supported by Ms. Ballard's declaration.  Ms. Ballard has held her position in DOS' Office of Records Management for ten years.  Ballard Decl. ¶ 1.  Her job responsibilities include responding to passport records requests, reviewing and releasing passport records and information, and archiving and retrieving such records.  *Id.* ¶ 3.  Considering her significant personal knowledge and experience with State Department recordkeeping and retrieval practices, Ms. Ballard's attestation that "the Department does not maintain any index of, or 'finding aid' for," the CRDAs is entitled to significant weight.  Ballard Decl. ¶ 10; *see Amnesty Int'l USA v. Cent. Intel. Agency*, No. 07 Civ. 5435, 2008 WL 2519908, at *11 (S.D.N.Y. June 19, 2008) (search was not necessary where declarations from appropriate agency officers explained why, based on their knowledge of the agency, they knew no responsive records existed).

Ms. Ballard's detailed explanation of the Department's recordkeeping and retrieval systems enhances the credibility of her declaration.  As she explains, for CRDAs that exist in

paper form, the Department organizes records based on the date they were digitized (if they have been digitized at all) and their unique identifier or batch numbers, rather than by any of the categories of information referenced in Mr. Ferretti's request. Ballard Decl. ¶ 9. The only way to review these records would be manually to search every box in which they might be stored. *Id.* ¶ 20. For digitized records, the Department relies on PIERS's search function, which only allows searches on a record-by-record basis and is incapable of generating a list of key data from all CRDAs in the manner suggested by Mr. Ferretti's request. *Id.* ¶¶ 8–19. The State Department's rational explanation for how technical limitations prohibit it from fulfilling Mr. Ferretti's request satisfies its burden on summary judgment. *See Whitaker*, 970 F.3d at 208 (agency's explanation was sufficient because it contained "details [that] adequately explain why defendant would not have records responsive to [the plaintiff's] requests"); *Espino v. U.S. Dep't of Just.*, 869 F. Supp. 2d 25, 28 (D.D.C. 2012) (agency's "detailed and non-conclusory" declarations were sufficient on summary judgment to "demonstrate the adequacy of its search"); *see also* 5 U.S.C. § 552(a)(4)(B) (courts must "accord substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility . . . and reproducibility").

Ms. Ballard's explanation is corroborated by other State Department employees with whom she consulted as part of the Department's search. Specifically, she states that she spoke with Department personnel possessing "subject matter expertise" in PFM and PIERS. Ballard Decl. ¶ 13. Those with whom she consulted included employees from the Office of Consular Systems and Technology; they "confirm[ed] that the Department has not maintained an index for CRDAs since PFM's replacement with PIERS." *Id*. Those employees further explained that "there is no 'backend' from which the Department may extract the entire database of CRDAs."

*Id.* ¶ 17.  True, some Department personnel can access the database directly and thus circumvent certain of PIERS's limitations, such as the cap on the number of search results that will be returned.  *Id.* ¶ 18.  Those "backend" searches, however, yield "only reference numbers to be used in PIERS, which is to say the results contain no information about the record(s) being requested that could be used to generate an index or finding aid for all the CRDAs."  *Id.*

Ms. Ballard's descriptions of her consultations with colleagues, which she conducted in tandem with other search efforts and as a complement to her own personal knowledge, are appropriate and credible.  *See Flores v. U.S. Dep't of Just.*, 391 F. Supp. 3d. 353, 362 (S.D.N.Y. 2019) ("Although the declarants were not personally involved in every part of the defendant's search, the declarations sufficiently establish the declarants' personal knowledge of the relevant FOIA procedures and the search."); *Willis v. U.S. Dep't of Just.*, 581 F. Supp. 2d 57, 66 (D.D.C. 2008) (declarations "may be submitted by an official who coordinated the search, and need not be from each individual who participated in the search").  Her account is also consistent with the declaration of Sharon Westmark, who works in the Consular Systems and Technology division of the relevant bureau at DOS and is personally familiar with the technical workings of the Department's databases.  Westmark Decl. ¶¶ 1–2, 10–15.

Ms. Ballard and Ms. Westmark's declarations make clear that the State Department, following a review of its systems and capacities, reasonably concluded that the records Mr. Ferretti is seeking do not exist.  That satisfies its burden on summary judgment.  *See Whitaker*, 970 F.3d at 208 ("We see no reason to depart from the sensible and persuasive approach employed by the courts that have considered this question, and we therefore conclude that an agency need not conduct a search that it has reasonably determined would be futile."); *Jenkins v. U.S. Dep't of Just.*, 263 F. Supp. 3d 231, 235 (D.D.C. 2017) (agency not required to conduct a

search when it demonstrated the "unlikelihood of the existence of any responsive agency records");  *Earle v. U.S. Dep't of Just.*, 217 F. Supp. 3d 117, 123–24 (D.D.C. 2016) (declaration from an agency employee, supported by "his personal knowledge, as well as information provided by other knowledgeable official[s]," was sufficient on summary judgment to show that search would be futile).  Ms. Ballard's further representation that "[a]ll files likely to contain relevant records were searched" and no responsive records were uncovered eliminates any doubt as to the adequacy of the Department's search.  Ballard Decl. ¶¶ 13, 23.

### B. Plaintiff Has Failed to Rebut the State Department's Showing That Its Search Was Adequate

"When an agency has satisfied its burden of showing that its search was adequate," the burden shifts to the plaintiff to "show either bad faith sufficient to impugn the agency's affidavits or [to] provide some tangible evidence that . . . summary judgment is otherwise inappropriate." *Am. C.L. Union Immigrants' Rts. Project v. U.S. Immigr. & Customs Enf't*, 58 F.4th 643, 651 (2d Cir. 2023) (citations omitted); *see also Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't Agency*, 877 F. Supp. 2d 87, 96 (S.D.N.Y. 2012) ("Summary judgment is inappropriate where the agency's response raises serious doubts as to the completeness of the agency's search, where the agency's response is patently incomplete, or where the agency's response is for some other reason unsatisfactory.").

Plaintiffs make several arguments challenging the adequacy the State Department's search, but none is persuasive.  First, Plaintiffs argue that "it defies credulity to assert that a single record out of 331,000 can be located without the use of a finding aid or index."  Plaintiffs' Amended Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and Cross-Motion in Support of Plaintiffs' Summary Judgment Motion ("Pl. Mem."), Dkt. 42, at 9.  Specifically, they claim that Ms. Ballard's explanation of PIERS's search functionality is

unreliable because it "reveals nothing as to how the digitized versions of the paper CRDA records are organized, whether and how their content is searchable, and most importantly whether those records can be searched by PII." *Id.* That is not accurate. Ms. Ballard's declaration establishes that State Department employees can use PIERS to search CRDAs using PII; it simply does not rely on an index or finding aid to do so. Ballard Decl. ¶ 14. Instead, PIERS allows users to search for CRDAs on a record-by-record basis, using PII for query terms. *Id.* Plaintiffs provide no explanation why an index or finding aid that discloses the categories of information outlined in Mr. Ferretti's request would be necessary to conduct this type of search.

Plaintiffs further argue that the State Department improperly curtailed its search by adopting a narrow definition of the word "index." Plaintiffs suggest that the Department's search "may have been for a document assembled in the same format" as the index for the now-defunct PFM database, failing to consider the possibility that "the format of an index used to find CRDA records within the PIERS database may have changed." Pl. Mem. at 11. Nothing in Ms. Ballard's declaration suggests that the Department's search was informed by its understanding of PFM. Ms. Ballard references PFM's index only to confirm that it no longer exists and has not been replicated for PIERS. Ballard Decl. ¶¶ 12–13. The Department's chief explanation for the absence of responsive records has to do with the technical design of PIERS, not the legacy of PFM.

Finally, Plaintiffs claim that the "pool of potential records subject to a search is much larger than what is described by Defendant" because the Ballard Declaration is ambiguous as to how many documents originated in a digital format. Pl. Mem. at 15. That information is irrelevant because, as Ms. Ballard clarified in her reply declaration, "[a]ll [State] Department CRDAs that exist in electronic form—whether as a result of having been originally received by

10

the Department in electronic form or having been digitized from an originally paper source—can be retrieved from PIERS," subject to the limits of the system. Ballard Rep. Decl. ¶ 17.

Having failed to present evidence of incompleteness, agency bad faith, or some other ground upon which to challenge the State Department's declarations, Plaintiffs have failed to raise a genuine dispute of material fact as to the adequacy of the Department's search.

### III.  Fulfilling Mr. Ferretti's Request Would Require the State Department to Create a New Record

Setting aside the State Department's efforts to locate a preexisting responsive document, Plaintiffs argue that the Department could fulfill Mr. Ferretti's request with relative ease by running search queries on its existing database.

FOIA, as amended by the Electronic Freedom of Information Act ("E-FOIA") Amendments of 1996, "require[es] federal agencies . . . to make 'reasonable efforts to search for [responsive] records in electronic form or format' —defining 'search' as 'to review, manually or by automated means, agency records for the purpose of locating those records which are responsive to a request.'" *Am. C.L. Union Immigrants' Rts. Project*, 58 F.4th at 653 (quoting 5 U.S.C. § 552(a)(3)(B)-(D)). Although it is well-established that "FOIA imposes no duty on [an] agency to create records," *Forsham v. Harris*, 445 U.S. 169, 186 (1980); *see also Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980); *Everytown for Gun Safety Support Fund v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 984 F.3d 30, 36 (2d Cir. 2020), with the E-FOIA amendments, Congress "recognized that '[c]omputer records found in a database rather than in a file cabinet may require the application of codes or some form of programming to retrieve the information.' The need to employ such codes or programming would 'not amount to the creation of records.'" *Am. C.L. Union Immigrants' Rts. Project*, 58 F.4th at 653 (quoting H.R. Rep. No. 104-795, at 22 (1996)).

11

To determine whether Mr. Ferretti's request is for a database search or for the creation of new records, the Court must first establish the nature of the records Mr. Ferretti seeks. *See Whitaker*, 970 F.3d at 206 (agency's FOIA compliance is "measured by the reasonableness of the effort in light of the specific request"). His request was for "the [i]ndex or finding aid" associated with CRDAs from 1975 to the present. Ferretti Request. While he admitted that he was unable to "specify exactly what type of document" he was requesting, in plain English, he wants a list containing the names and dates of death of all persons for whom the State Department has CRDAs from 1975 to the present. *Id.*[4] Or, as Plaintiffs summarize the request in their submission (not in plain English), Mr. Ferretti wants "a document extracting key terms from a series of individual records and organizing those key terms in some logical, relational sequence or table by which each record could be located." Pl. Mem. at 11.

By Plaintiffs' own description, Mr. Ferretti's request is for a document extrinsic to the CRDAs themselves. Because no such document exists, *see* Part II, *supra*, fulfilling the request would require the State Department to create a new document, exceeding its obligations under FOIA. *National Security Counselors v. Central Intelligence Agency*, 898 F. Supp. 2d 233 (D.D.C. 2012), is instructive. In that case, the plaintiff requested the CIA to produce, among other things, "database listings" of past FOIA requesters who met various criteria. *Id.* at 245. The CIA refused, noting that it did not maintain such listings and would need to create new records and conduct research into its existing records (as opposed to merely running a search) to fulfill the request. *Id.* The court found that the CIA was justified in declining the request, reasoning:

> Producing a listing or index of records . . . is different than producing particular points of data (*i.e.*, the records themselves). This is because a particular listing or

---

[4] Specifically, the request is for: "whose Reports of deaths are in possession of the State Department, and when those people died." Ferretti Request.

> index of the contents of a database would not necessarily have existed prior to a given FOIA request . . . . The same would be true of paper, rather than electronic, records. For example, if a FOIA request sought "an inventory of all non-electronic records created in 1962 regarding the Cuban Missile Crisis," an agency need not create an inventory if one did not already exist, though the agency would need to release any such non-electronic records themselves if they were requested and were not exempt from disclosure. Therefore, a FOIA request for a listing or index of a database's contents that does not seek the contents of the database, but instead essentially seeks information about those contents, is a request that requires the creation of a new record, insofar as the agency has not previously created and retained such a listing or index.

*Id.* at 271.

The fact that Mr. Ferretti seeks an index of records, as opposed to the records themselves, also distinguishes this case from *Immigrant Defense Project v. United States Immigration & Customs Enforcement*, 208 F. Supp. 3d 520 (S.D.N.Y. 2016). That case, in relevant part, concerned ICE's denial of a FOIA request because ICE "[did] not track or code data in a manner that would allow [it] to produce responsive data." *Id.* at 532. The court found that ICE failed to make "a good faith attempt to assist the requester," who indicated that a sample of raw data would have been acceptable if coded data were not available. *Id.* at 532–33 (quoting *Ruotolo v. Dep't of Just.*, 53 F.3d 4, 10 (2d Cir. 1995)). Here, by contrast, there is nothing to suggest that the State Department could have fulfilled Mr. Ferretti's request simply by producing all or some of the CRDAs in its possession. Rather, he explicitly sought a master document that indicated (1) the full range of CRDAs from 1975 to the present, (2) the name of each decedent associated with those CRDAs, and (3) the date of death for each decedent. Ferretti Request.[5]

Plaintiffs argue that, even if the State Department does not currently possess a document that matches Mr. Ferretti's description, one could be generated via a "a database extract of the

---

[5] Mr. Ferretti states in his request that it would be "acceptable" for the Department to refrain from providing "the most recent few months or years of death data" if that would be "easier." Ferretti Request. Even assuming a truncated timeframe, the point remains that Mr. Ferretti seeks a master document containing an overview of key information from many different records, rather than the records themselves.

name of the decedent, along with the date and location of death." Pl. Mem. at 13, 16, 19; Ferretti Request.  In practice, this proposed course of action would "cross[ ] the all-important line between searching a database, on the one hand, and either creating a record or conducting research in a database on the other." *Am. C.L. Union Immigrants' Rts. Project*, 58 F.4th at 643 (quoting *Nat'l Sec. Couns.*, 898 F. Supp. 2d at 270–71).  Given the numerical limits on search returns that "frontend" users encounter when running queries on PIERS, Plaintiffs' proposed database search would have to be conducted on the "backend."  Ballard Decl. ¶ 18.  Backend searches, however, yield only a list of reference numbers; thus, Department personnel would need to cross-reference each reference number, one by one, in PIERS to determine the names and dates of death with which each reference number is associated.  *Id*. ¶¶ 18, 20.  This already onerous process does not account for paper CRDAs that have not been digitized, all of which would need to be manually searched.  *Id*. ¶ 20.  What Plaintiffs characterize as a mere "database extract" would, in fact, be an extensive project requiring thousands of staff hours, a task far more complex than the sort of routine data manipulation that may be required under FOIA.  *Id.*; *see Hawkinson v. Executive Office for Immigration Review*, No. 21-11817, 2023 WL 5153768, at *9 (D. Mass. Aug. 10, 2023) (collecting cases) ("Courts have repeatedly found that agencies are excused from creating files or database indices for FOIA requesters. . . .  Defendant was therefore not obligated to create a new index file in order to search the BIA Shared Drive by keyword as plaintiff requested.").

Plaintiffs' challenges to the State Department's representations about the burden involved in conducting its proposed "database extract" are unpersuasive.  Plaintiffs argue that because PIERS allows users to search for records using PII, there must be an "underlying data table" that "comprise[s] an index to the full set of CRDA records."  Pl. Mem. at 10.  Plaintiffs' assumption,

14

even if true, is immaterial. The State Department does not dispute that PIERS stores PII about individual records, nor that users (at least on the "backend") can use PII to run queries on the full universe of digitized CRDAs. Ballard Decl. ¶¶ 14, 18. The problem is that those backend queries only return reference numbers for individual CRDAs, rather than an index of search results with identifying information about each CRDA. *Id.* ¶ 18. Put otherwise, the reason the Department cannot fulfill Mr. Ferretti's request is not that it is incapable of *inputting* PII in its database searches; it is that the *outputs* of such searches would be an unhelpful list of reference numbers. To provide any information responsive to Mr. Ferretti's request, a State Department employee "would still have to search each of those reference numbers individually in PIERS for the corresponding records," review the names and dates of death associated with each record, and compile the results into a new document. Ballard Rep. Decl. ¶ 24.

Plaintiffs are skeptical of the State Department's account of its technical limitations, insisting that a "straightforward process of querying, sorting and exporting data" would satisfy Mr. Ferretti's request. Pl. Mem. at 18. Plaintiffs support this assertion with a declaration from Ron Schnell, a Managing Director at Berkeley Research Group with significant experience in database design and management. Declaration of Ron Schnell ("Schnell Decl."), Dkt. 41, ¶¶ 2, 7–8. Mr. Schnell opines that fulfilling Mr. Ferretti's request "would not be burdensome for the Government" and could be done "with ease" using the systems Ms. Ballard describes in her declaration. *Id.* ¶¶ 12–13.

Mr. Schnell's declaration is of limited value to the Court. As Judge Furman explained in a recent decision involving these same parties and the same purported expert, Mr. Schnell has never worked at the State Department or used its databases. *Reclaim the Records v. U.S. Dep't of State*, No. 23-CV-1471, 2024 WL 3728979, at *6 (S.D.N.Y. Aug. 7, 2024). His

"understanding of the record-keeping system relevant to this case concededly stems entirely from Ballard's declarations, and his declaration is limited to broad assertions about . . . what he would expect someone with direct database access to do when faced with a FOIA request like Plaintiffs'." *Id.* (citations omitted); *see* Schnell Decl. ¶¶ 19, 22. Mr. Schnell's general understanding of databases is not a substitute for the firsthand knowledge of Ms. Ballard and Ms. Westmark, who have spent years working with the specific database at issue in this case. Ballard Decl. ¶¶ 1–2; Westmark Decl. ¶¶ 1–2; *Long v. Immigr. & Customs Enf't*, 149 F. Supp. 3d 39, 57–58 (D.D.C. 2015) (plaintiff's expert, "limited by his lack of first-hand experience" with a government database, cannot counter agency's official who "has proffered a declaration as to the technical feasibility and reproducibility of a records request"); *In 't Veld v. Dep't of Homeland Sec.*, 589 F. Supp. 2d 16, 17–21 (D.D.C. 2008) (summary judgment granted for DHS where plaintiff's "expert's affidavit [was] based on the erroneous assumption that DHS's data systems are the same as [other] data systems and because DHS submitted detailed affidavits describing an adequate search"); *Hall v. Cent. Intel. Agency*, 538 F. Supp. 2d 64, 72 (D.D.C. 2008) ("[T]he Declaration is at most an opinion that defendant did not conduct an adequate search. [Declarant] cannot speak to the truth of the events he alleges to have occurred, to which he has no personal knowledge.").

Even looking past its questionable foundation, Mr. Schnell's declaration fails to raise a genuine dispute of material fact. At base, his claim is that because PIERS users can run searches using the criteria set forth in Mr. Ferretti's FOIA request, it must also be the case that the underlying database "maintains these fields, and that these fields can be used in a simple query." Schnell Decl. ¶ 27. This is uncontroversial. Ms. Ballard explains in her declaration that "backend" PIERS users can search records using a range of criteria (including the ones set forth

16

in Mr. Ferretti's request).  Ballard Decl. ¶¶ 14, 18.  The problem is that these "backend" searches yield "only reference numbers to be used in PIERS," not data about records.  *Id*. ¶ 18.  While the State Department is capable of running the types of database searches Mr. Schnell suggests, those searches would not generate a document responsive to Mr. Ferretti's request.  Nothing in Mr. Schnell's declaration suggests otherwise.

In addition to Mr. Schnell's declaration, Plaintiffs identify two public documents that they say contradict the State Department's explanation of its systems.  Neither does so.  First, Plaintiffs point to a March 2015 Systems of Records Notice ("SORN") published by the Department, which notes the existence of "[a]n electronic index of . . . Consular Reports of Death Abroad."  Ballard Decl. Ex. 3, Dkt. 31-3, at 3; Declaration of David B. Rankin ("Rankin Decl.") Ex. 5, Dkt. 37-5, at 3.  As Ms. Ballard explains, the term "electronic index," in this context, "refers to the entirety of the collection of CRDAs as maintained in digital form in PIERS, and not to an index or list of CRDAs that is available to a system user."  Ballard Decl. ¶ 15; Ballard Decl. Ex. 3 at 3.  Plaintiffs argue that to the extent the State Department "conceives of the PIERS database itself as a massive index of the data it contains, this is precisely the information the Request seeks, and should be produced rather than withheld, even if this requires the application of a search query to the PIERS database in order to extract the relevant data points."  Pl. Mem. at 12.  This argument is purely semantic.  Mr. Ferretti's request is for an index that discloses "whose [CRDAs] are in possession of the State Department, and when those people died."  Ferretti Request.  As discussed, PIERS is incapable of generating that information via the application of rudimentary search terms.  The appearance of the word "index" in a single State Department document does nothing to change that fact.

The second document Plaintiffs identify is an October 2020 Privacy Impact Assessment ("PIA"), in which the Department confirms that PIERS "provides structured query capabilities to the data maintained within its environment" and notes that authorized Department employees can share its data with appropriate entities. Rankin Decl. Ex. 6, Dkt. 37-6, at 1, 7–9, 13–15. Plaintiffs contend that the PIA "demonstrates that the database is equipped to share data as needed." Pl. Mem. at 14. That is not in dispute. The PIA's reference to "structured query capabilities" is consistent with Ms. Ballard's declaration, which discusses those exact capabilities on both the "frontend" and "backend" of PIERS. Ballard Decl. ¶¶ 14, 16, 18. The PIA's indication that data retrieved from PIERS may be shared with third parties is likewise unremarkable. The document never suggests that such data are gathered or distributed in ways that would align with Mr. Ferretti's request (*i.e.*, as a master document containing specific information about a large swath of CRDAs). Thus, the PIA, like the SORN, does not undermine the State Department's account of the facts.

Given the State Department's thorough explanation why its system is incapable of generating a responsive record via a simple search query, and its thorough explanation why the only way it could produce such a record would be through extensive database research from which a new document could be created, its refusal to fulfill Mr. Ferretti's request was justified.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED and Plaintiff's cross-motion for summary judgment is DENIED. The Clerk of the Court is respectfully directed to close the motions at Dkts. 30 and 36 and to terminate the case.

**SO ORDERED.**

Date:  **August 26, 2024**
       **New York, NY**

                                              **VALERIE CAPRONI**
                                            **United States District Judge**